# IN THE SUPREME COURT OF IOWA

No. 25 / 06-0410

Filed December 28, 2007

**STATE OF IOWA,**

Appellant,

vs.

**DAWN MARIE NAIL and
JOSHUA KUCERA,**

Appellees,

Appeal from the Iowa District Court for Johnson County, Sylvia A. Lewis, District Associate Judge.

We granted discretionary review of a district court decision which declared Iowa Code section 907.14(1) void for vagueness. **REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.**

Thomas J. Miller, Attorney General, Kristin Guddall and Darrel L. Mullins, Assistant Attorneys General, J. Patrick White, County Attorney, and Iris Frost, Assistant County Attorney, for appellant.

John B. Whiston, Iowa City, and Rachel C.B. Antonuccio and Mary T. Northrup, Student Legal Interns, for appellees.

**APPEL, Justice.**

In this case, the court is called upon to determine whether Iowa Code section 907.14(1) (2005), which provides for a civil money penalty as a result of a deferred judgment, is constitutional. The defendants argue that the statute is unconstitutionally vague because it does not expressly contain a limit on the amount of penalty assessed. They further allege that the provision violates due process of law by imposing punishment prior to an adjudication of guilt. The district court found the statutory provision constitutionally infirm and refused to enforce it against the appellees Nail and Kucera. We granted the State's discretionary appeal to address these constitutional issues. For the reasons expressed below, we reverse the ruling of the district court and remand the case for further proceedings.

## I. Background Facts and Prior Proceedings.

On July 4 and July 16, 2005, respectively, Dawn Nail and Joshua Kucera were arrested for first offense operating a motor vehicle while intoxicated (OWI). Both defendants originally pled not guilty. As part of a plea bargain, the defendants entered written guilty pleas. The written guilty pleas stated that the defendants understood the nature of the charge and knew "the maximum possible penalty and any mandatory minimum penalty therefor" and that the court may enter the maximum sentence provided by law.

Both defendants requested deferred judgments. As part of the plea bargain, the State and the defendants agreed that the defendants "may receive a deferred judgment, self-supervised probation, and must complete the Kirkwood Weekend Program." The district court accepted the pleas. A hearing was then set for the entry of judgment and sentencing.

Prior to the scheduled hearing, the defendants challenged the potential imposition of a civil penalty as part of a deferred judgment. Iowa Code section 907.14(1) provides:

> Upon entry of a deferred judgment pursuant to section 907.3, a defendant shall be assessed a civil penalty of an amount not less than the amount of any criminal fine authorized by law for the offense under section 902.9 or section 903.1.

The defendants argued, among other things, that the civil penalty authorized by section 907.14(1) violated both the United States and the State of Iowa Constitutions because (1) the statute was void for vagueness as it failed to establish a ceiling for potential civil penalties and lacked substantive guidelines or criteria for law enforcement and courts to apply, and (2) the statute imposed a civil penalty prior to an adjudication of guilt, thereby violating due process.

At the beginning of the hearing, the district court proposed separating the granting of a deferred judgment from the imposition of a civil money penalty. The State and the defendants agreed to this approach.

When the court asked for a statement on the issue of granting a deferred judgment, defense counsel asked the court that "part of the guilty plea colloquy be conducted by the Court to make sure that [the defendants are] fully informed about the maximum sentence that would be available if they do not get a deferred." In response, the district court stated that upon conviction of first offense OWI, there is a minimum jail sentence of forty-eight hours and a maximum jail sentence of one year, a fine of $1000 is assessed, along with a thirty-two percent surcharge and court costs, but no civil money penalty is imposed. After the district court's statement, the defense counsel advised the court that the defendants wished to maintain their pleas of guilt, which was confirmed by each defendant on the record.

The district court then returned to the issue of whether the defendants should be granted a deferred judgment. The State did not resist deferred judgment in light of the defendants' lack of prior criminal history and their relatively low levels of intoxication—.093 and .092. Defense counsel further assured the court that the defendants realized that they had each made "a horrible error of judgment" and promised that the court "should not see them again, ever."

At this point, the district court asked each defendant if they requested a deferred judgment and each answered affirmatively. The court, without objection from the defense, granted deferred judgment in each case. As a condition of the deferred judgment, the court ordered that each defendant be on self-supervised probation, pay a fee to the Department of Corrections for the administration of the program, and complete the Kirkwood Weekend Program. After granting the deferred judgments, the court then proceeded to entertain arguments related to the lawfulness of the civil penalty.

After the hearing, the district court entered an order holding that Iowa Code section 907.14(1) as applied to Nail and Kucera violated the Due Process Clause of the Fourteenth Amendment of the United States Constitution. The district court found that the statute does not set an upper limit on the civil penalty and that the minimum amount is either $1000 as established by Iowa Code section 321J.2(2)(*a*)(2) or $250 pursuant to Iowa Code section 903.1. Further, the district court stated that the statute does not indicate whether the amount assessed may be suspended, paid through community service work, or reduced under conditions set forth in chapter 321J. The court rejected the State's claim that the statute was remedial in nature and designed to recoup the costs of investigating, prosecuting, and administering to defendants who receive deferred

judgments. The court further found that the imposition of the civil penalty had the characteristics of a criminal punishment. For these reasons, the court held that Iowa Code section 907.14(1) violated the Due Process Clause of the United States Constitution. We granted the State's application for discretionary review.

## II. Standard of Review.

Review of constitutional claims is de novo. *State v. Shanahan*, 712 N.W.2d 121, 131 (Iowa 2006).

## III. Due Process: Void for Vagueness.

**A. Overview of the Void-for-Vagueness Doctrine.** The Fourteenth Amendment to the Constitution of the United States provides that "[n]o state shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. Similarly, the Iowa Constitution, Article I, section 9 provides that "no person shall be deprived of life, liberty, or property, without due process of law." Iowa Const. art. I, § 9. This court has generally deemed the federal and state due process clauses to be " 'identical in scope, import, and purpose.' " *In re Guardianship of Hedin*, 528 N.W.2d 567, 575 (Iowa 1995) (quoting *Bruns v. State*, 503 N.W.2d 607, 611 (Iowa 1993)). Neither party has suggested that a due process analysis under the Iowa Constitution should be approached differently than under the parallel provision in the United States Constitution. Therefore, for the purposes of this opinion, we will treat the provisions as identical. *Sanchez v. State*, 692 N.W.2d 812, 819 (Iowa 2005); *Racing Ass'n of Cent. Iowa v. Fitzgerald*, 675 N.W.2d 1, 6 (Iowa 2004) ("[I]t is prudent to delay any consideration of whether a different analysis is appropriate to a case in which this issue was thoroughly briefed and

explored." (citing *In re Detention of Garren*, 620 N.W.2d 275, 280 n.1 (Iowa 2000))).

Due process is designed to ensure fundamental fairness in interactions between individuals and the state. Among other things, the Due Process Clause prohibits enforcement of vague statutes under the void-for-vagueness doctrine. There are three generally cited underpinnings of the void-for-vagueness doctrine. First, a statute cannot be so vague that it does not give persons of ordinary understanding fair notice that certain conduct is prohibited. Second, due process requires that statutes provide those clothed with authority sufficient guidance to prevent the exercise of power in an arbitrary or discriminatory fashion. Third, a statute cannot sweep so broadly as to prohibit substantial amounts of constitutionally-protected activities, such as speech protected under the First Amendment. *State v. Hunter*, 550 N.W.2d 460, 463 (Iowa 1996) (citing *Grayned v. City of Rockford*, 408 U.S. 104, 108–09, 92 S. Ct. 2294, 2298–99, 33 L. Ed. 2d 222, 227–28 (1972)), *overruled on other grounds by State v. Robinson*, 618 N.W.2d 306, 312 (Iowa 2000).

The United States Supreme Court has employed vagueness analysis both in the context of proscribing criminal conduct *and* in imposing criminal penalties. *United States v. Evans*, 333 U.S. 483, 68 S. Ct. 634, 92 L. Ed. 823 (1948). The majority of cases in other jurisdictions agree. *See State v. Thompson*, 495 A.2d 1054, 1061 (Conn. 1985); *Commonwealth v. Gagnon*, 441 N.E.2d 753, 755 (Mass. 1982); *Duquette v. Warden, New Hampshire State Prison*, 919 A.2d 767, 773 (N.H. 2007); *State v. Manzie*, 773 A.2d 659, 661 (N.J. 2001); *State v. Egbert*, 748 P.2d 558, 559 (Utah 1987); *Nowack v. State*, 774 P.2d 561, 564 (Wyo. 1989). *But see State v. Booth*, 347 So. 2d 241, 243 (La. 1977). We hold, therefore, that the void-for-vagueness

doctrine applies to legislation establishing civil or criminal sanctions. *State v. Powers*, 278 N.W.2d 26, 29 (Iowa 1979).

In order to provide due deference to our legislature, this court has applied what has been called avoidance theory in the context of due process challenges to legislative acts. Stuart Buck & Mark L. Rienzi, *Federal Courts, Overbreadth, and Vagueness: Guiding Principles for Constitutional Challenges to Uninterpreted Statutes*, 2002 Utah L. Rev. 381, 391–92 (2002); Adrian Vermeule, *Saving Constructions*, 85 Geo. L.J. 1945, 1948–49 (1997). For example, in determining whether a statute is unconstitutionally vague, this court presumes the statute is constitutional and gives " '*any* reasonable construction' " to uphold it. *State v. Millsap*, 704 N.W.2d 426, 436 (Iowa 2005) (quoting *Hunter*, 550 N.W.2d at 462) (emphasis added).

Conversely stated, challengers to a statute must refute " '*every* reasonable basis' " upon which a statute might be upheld. *State v. Seering*, 701 N.W.2d 655, 661 (Iowa 2005) (quoting *State v. Hernandez-Lopez*, 639 N.W.2d 226, 233 (Iowa 2002)) (emphasis added). Where a state "statute 'can be made constitutionally definite by a reasonable construction, . . . this Court is under a duty to give the statute that construction.' " *State v. Williams*, 238 N.W.2d 302, 306 (Iowa 1976) (quoting *United States. v. Harriss*, 347 U.S. 612, 618, 74 S. Ct. 808, 812, 98 L. Ed. 989, 996–97 (1954)). Avoidance theory, moreover, applies to the interpretation as well as the construction of statutes. Norman Singer, *Statutes and Statutory Construction* § 45:04 (6th ed. 2000) (noting that the distinction between interpretation and construction is not meaningful).

The underpinning of avoidance theory is that a definitive judicial gloss can save a statute from void-for-vagueness infirmity. The United States Supreme Court has repeatedly made clear that vagueness challenges are

determined on the basis of statutes and pertinent case law rather than the subjective expectations of particular defendants based on incomplete legal knowledge. *See, e.g., Kolender v. Lawson*, 461 U.S. 352, 370, 103 S. Ct. 1855, 1865, 75 L. Ed. 2d 903, 918 (1983); *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 494 n.5, 102 S. Ct. 1186, 1191 n.5, 71 L. Ed. 2d 362, 369 n.5 (1982); *Bouie v. City of Columbia*, 378 U.S. 347, 355 n.5, 84 S. Ct. 1697, 1703 n.5, 12 L. Ed. 2d 894, 901 n.5 (1964).

Although the incorporation of code books and case law in the evaluation of fair notice has been criticized on the ground that ordinary citizens lack access to them, *see* John Calvin Jefferies Jr., *Legality, Vagueness, and Construction of Penal Statutes*, 71 Va. L. Rev. 189, 207–08 (1985), United States Supreme Court holdings that vagueness may be cured through judicial narrowing have been widely accepted and characterized as settled law. *See id.* at 207; Andrew E. Goldsmith, *The Void-for-Vagueness Doctrine in the Supreme Court, Revisited*, 30 Am. J. Crim. L. 279, 295 (2003) (noting judicial narrowing of statute as cure to vagueness problems); Robert Batey, *Vagueness and the Construction of Criminal Statutes—Balancing Acts*, 5 Va. J. Soc. Pol'y & L. 1, 5 (1997) (stating that it is settled law that judicial glosses on criminal statute can "cure" vagueness); Note, *The Void-for-Vagueness Doctrine in the Supreme Court*, 109 U. Pa. L. Rev. 67, 73 (1960) (observing that the Supreme Court "invariably" allows clarifying gloss of state courts to penal statutes in vagueness context).

A statute may be saved from constitutional deficiency, moreover, if its meaning is fairly ascertainable by reference to other similar statutes or other statutes related to the same subject matter. *Branch v. Smith*, 538 U.S. 254, 281, 123 S. Ct. 1429, 1445, 155 L. Ed. 2d 407, 432–33 (2003); *State v.*

*Iowa Dist. Ct.*, 616 N.W.2d 575, 581 (Iowa 2000) [hereinafter *State*]; *Powers*, 278 N.W.2d at 29. This reference to other related statutes is commonly referred to as the interpretation or construction of a statute *in pari materia.*

The *in pari materia* approach is especially appropriate in the area of criminal law, where our legislature has established a number of code chapters with highly detailed, interconnecting provisions. When considering an incremental modification, the legislature sometimes adopts relatively cryptic measures that can be fully understood only in the context of the web of preexisting statutes. While such statutes may occasionally be imperfectly drawn, a statute which is not a paradigm of legislative drafting does not necessarily pose a constitutional problem if any inherent difficulties are resolved through judicial interpretation. *Colten v. Kentucky*, 407 U.S. 104, 110, 92 S. Ct. 1953, 1957, 32 L. Ed. 2d 584, 590 (1972); *Commonwealth v. Heinbaugh*, 354 A.2d 244, 246 (Pa. 1976).

In light of our recognition of the nature and realities of the legislative process, we have repeatedly emphasized that sentencing provisions in Iowa's criminal code must be read *in pari materia* with other sentencing provisions found elsewhere in the code. *State*, 616 N.W.2d at 581; *State v. Carstens*, 594 N.W.2d 436, 437 (Iowa 1999); *State v. Kostman*, 585 N.W.2d 209, 212 (Iowa 1998); *State v. Daniel*, 574 N.W.2d 333, 335 (Iowa 1998); *State v. Byers*, 456 N.W.2d 917, 919 (Iowa 1990); *State v. Link*, 341 N.W.2d 738 (Iowa 1983), *superseded by statute as stated in Jenney v. Iowa Dist. Ct.*, 456 N.W.2d 921, 923 (Iowa 1990); *State v. Hildebrand*, 280 N.W.2d 393, 397 (Iowa 1979). Through such interpretation, we necessarily operate on the objective assumption that the legislature strives to create a symmetrical and harmonious system of laws. *State*, 616 N.W.2d at 581; *Fitzgerald v. State*, 220 Iowa 547, 552, 260 N.W. 681, 683–84 (1935).

**B. Application of Void-for-Vagueness Principles: Is there a Ceiling for Civil Penalties Imposed Pursuant to Iowa Code Section 907.14(1)?** In examining the language of section 907.14(1), the legislature plainly established a floor for civil penalties in deferred judgment proceedings, but did not expressly create a ceiling. As a result, Nail and Kucera claim that the statute provides no guidance of any kind for a district court judge, who would be empowered to impose a potentially limitless civil money penalty for even minor crimes.

The State does not directly contest the proposition that a statute that creates an unlimited civil penalty provision would violate due process. Instead, the State asserts that a cardinal rule of statutory construction is that a statute should not be interpreted or construed to create absurd results. *State v. Pickett*, 671 N.W.2d 866, 870 (Iowa 2003). It would be absurd, according to the State, to read section 907.14(1) as authorizing the court to impose a civil penalty of literally any amount. In order to avoid this potentially absurd result, the State argues that the reference in section 907.14(1) to fines "authorized by law for the offense under sections 902.9 or section 903.1" establishes an upper limit by implication.

We do not agree that the express language found in the narrow confines of section 907.14(1) establishes a ceiling for civil penalties. The statutory language itself—"a defendant shall be assessed a civil penalty of an amount not less than the amount of any criminal fine authorized by law for the offense under section 902.9 or section 903.1"—simply establishes a floor for civil penalties, not a ceiling.

But the analysis does not end at this point. While the language of section 907.14(1) considered in isolation does not *expressly* establish a ceiling, our cases dictate that this code provision must be read *in pari*

*materia* with the system of laws that make up our criminal law to produce a coherent whole. *See, e.g.*, *Byers*, 456 N.W.2d at 919; *Hildebrand*, 280 N.W.2d at 397. While the penalties imposed under our deferred judgment statute may be only quasi-criminal rather than criminal in nature, the statute itself is part of the system of laws that govern criminal conduct generally and must be considered in this larger context. *State v. McSorley*, 549 N.W.2d 807, 809 (Iowa 1996) (noting that statutes related to same subject matter *or to closely allied subject matter* must be considered together in light of common purposes and intent); *Wonder Life Co. v. Liddy*, 207 N.W.2d 27, 32 (Iowa 1973) (same).

The concept of reading a penalty statute *in para materia* with other criminal statutes has been utilized by this court to provide a statutory floor where the provision expressly created only a ceiling. For example, in *Link*, 341 N.W.2d at 738, we considered the meaning of Iowa Code section 908.11. This provision stated that upon the revocation of probation, the district court was empowered to sentence the defendant to "the sentence [previously] imposed or any lesser sentence." *Id.* at 739. This provision created a ceiling, namely, the sentence previously imposed, but no floor. Read literally, the phrase "*any* lesser sentence" could be construed as authorizing the district court to impose a sentence *less* than the relevant statutory minimum or even no sentence at all. *Id.* at 740.

This court in *Link* rejected the literalist approach, holding that upon revocation of probation, the sentence must be within the range of sentences that could have been imposed in the underlying criminal proceeding. *Id.* *Link* stands for the proposition, therefore, that where the words of a particular sentencing statute establish a ceiling but no floor, the statute

should not be read in isolation, but should be read in context with other related sentencing provisions of the criminal code. *Id.*

While the legislature in *Link* enacted a provision with a ceiling but no expressly stated floor, in this case the legislature enacted a statute with a floor but no expressly stated ceiling. For purposes of *in pari materia* analysis, this is a distinction without a difference. We note that other courts have used *in pari materia* analysis to establish ceilings for criminal sanctions where specific statutes established only penalty floors. For example, in *Commonwealth v. Bell*, 645 A.2d 211, 216–17 (Pa. 1994), the court held that a statute establishing a three-year minimum sentence, but no maximum sentence, was to be read together with a general criminal statute establishing a maximum penalty of five years. Similarly, in *United States v. Bruney*, 866 F. Supp. 874, 878 (D.V.I. 1994), the court held that a catch-all sentencing provision provided a maximum sentence for a specific statute that failed to provide any limitation on the maximum penalty.

In this case, the issue is made awkward by the fact that the legislature expressly incorporated Iowa Code sections 902.9 and 903.1 in establishing a floor but did not make a parallel reference to the statutes to establish a ceiling. Where the legislature has expressly cited sections 902.9 and 903.1 to establish a floor, but has declined to reference the cited statutes to create a ceiling, it can be argued that a court has no business rewriting the statute. According to the defense, the legislature considered the provisions of sections 902.9 and 903.1 and expressly chose to incorporate them for purposes of creating a floor and purposefully failed to reference them to create a ceiling. Arguably, this court should have no role in upsetting this legislative choice. *Zomer v. West River Farms, Inc.*, 666

N.W.2d 130, 133 (Iowa 2003); *State v. Wedelstedt*, 213 N.W.2d 652, 656–57 (Iowa 1973).

On the other hand, if we fail to adopt an *in pari materia* analysis to impose a ceiling on civil penalties under section 907.14(1), we violate the rule of statutory construction that a statute must be interpreted in a fashion that avoids unreasonable or absurd results inconsistent with legislative intent. *See* Iowa Code § 4.4(3) (noting that the legislature is presumed to intend "a just and reasonable result"); *Pickett*, 671 N.W.2d at 870; *State*, 616 N.W.2d at 589. It would be absurd to suggest that the legislature intended to vest unlimited discretion in a district court to establish a civil money penalty. Indeed, even the notion that the legislature intended to allow a district court to impose a civil penalty in excess of the potential criminal penalty is wholly illogical and would introduce unintentional distortions into the criminal justice system. *State*, 616 N.W.2d at 581 (rejecting statutory interpretation that would have treated younger offenders more harshly than older offenders for same crime). Deferred judgments are reserved for those defendants deserving a second chance.

We are convinced that the legislature, despite its clumsy wording, did not intend the absurd result of allowing district courts to impose unlimited civil penalties in section 907.14(1).[1] Instead, objectively viewed, we believe

---

[1]In brief, Nail and Kucera allege that the legislature deliberately chose not to cap the amount of the civil penalty. We disagree. Prior to the passage of Iowa Code section 907.14(1), an amendment was introduced which set the civil penalty floor at one hundred dollars and ceiling at one thousand dollars for all crimes regardless of the permissible fines available for criminal convictions. Additionally, this proposed across-the-board limitation made the imposition of the civil penalty permissive rather than mandatory in the deferred judgment setting. S. Amend. 3103A, 81st G.A., Reg. Sess. (Iowa 2005) (proposed amendment to House File 682). Thus, the proposed amendment stood for much different propositions than that advanced by the defendants in this case. In any event, these portions of the amendment were withdrawn prior to a vote. *Id.* Due to the nature of the proposed amendment as well as the failure of the legislature to vote upon it, it is not

that the enactment of section 907.14(1) was an incremental legislative act which must be read in context of the ceiling established by Iowa Code sections 902.9 and 903.1 even though the legislature did not expressly incorporate the ceiling into the statute.

With this interpretation, we give the statute a reasonable, contextual interpretation that is workable, promotes symmetry, and which therefore best manifests legislative intent. *State*, 616 N.W.2d at 581. Further, our approach gives life to the notion that a declaration of unconstitutionality should be avoided where possible through any reasonable statutory interpretation. *Hernandez-Lopez*, 639 N.W.2d at 233.

Under our interpretation, the provisions of Iowa Code sections 902.9 and 903.1 apply to create a ceiling for civil penalties that may be imposed when judgments are deferred. For serious misdemeanors like first offense drunk driving, the range of permissible criminal fines at the time of the convictions of Nail and Kucera was between $250 and $1500. This range, however, applies only "if a specific penalty is not provided for." Iowa Code § 903.1. The Iowa legislature has enacted a specific penalty for first time OWI, namely, a $1000 fine. *Id.* § 321J.2(2)(*a*)(2). As a result, the range of potential fines for serious misdemeanors under section 903.1 has no application. Instead, the penalty authorized by law under Iowa Code section 907.14(1) for first offense OWI is the "specific penalty . . . provided for" in Iowa Code section 321J.2(2)(*a*)(2)—$1000.

---

dispositive, or even illustrative, of the legislature's intent regarding a civil penalty ceiling. *See Puerto Rico Dep't of Consumer Affairs v. Isla Petroleum Corp.*, 485 U.S. 495, 501, 108 S. Ct. 1350, 1354, 99 L. Ed. 2d 582, 589 (1988) ("But unenacted approvals, beliefs, and desires are not laws."); *Johnson v. Transp. Agency of Santa Clara County, California*, 480 U.S. 616, 671–72, 107 S. Ct. 1442, 1473, 94 L. Ed. 2d 615, 656 (1987) (Scalia, J., dissenting) (warning that courts risk "ignor[ing] rudimentary principles of political science [when they] draw any conclusions regarding [legislative] intent from the *failure* to enact legislation.").

We also hold that because Iowa Code section 907.14(1) must be read in the context of our body of criminal law, the general sentencing provisions of criminal law in Iowa Code section 901.5 apply. That provision vests the district court with wide discretion in and general criteria for imposing sentences. *Hildebrand*, 280 N.W.2d at 396. The range of sentencing discretion under section 901.5 includes suspension of half the $1000 fine as provided in Iowa Code section 321J.2(2)(*a*)(2), requiring a defendant to perform community service in lieu of the fine under Iowa Code section 909.3A, and allowing payments to be made in installments under Iowa Code section 909.3. In other words, the discretionary tools available to the district court in the imposition of a civil penalty pursuant to a deferred judgment under section 907.14 are coextensive with those of the court in imposing a criminal fine under section 901.5 because the civil money penalty under section 907.14(1) is imposed "pursuant to Iowa Code section 901.5." *Carstens*, 594 N.W.2d at 437 (holding that section 902.9 sets forth general sentencing parameters, but must be read *in pari materia* with specific sentencing provisions found elsewhere in the Code). Any civil penalty that is imposed under section 907.14 is thus subject to other provisions of the criminal code related to the imposition of fines. *State*, 616 N.W.2d at 581 (holding that statute must be interpreted consistently with other statutes concerning the same or related subjects).

Given our approach to the statute, we next determine whether the statute is vague as applied to Nail and Kucera. We conclude the statute, as we have construed it, satisfies due process. Because the criminal law sanction for first offense OWI includes a $1000 fine, subject to discretionary reduction by the district court, our construction of the deferred judgment statute, as incorporating an identical monetary sanction, eliminates any

potential problem of fair notice to a person of ordinary intelligence. Further, by restricting the range of sentencing options, the second prong of due process attack related to the potential of arbitrary or discriminatory enforcement has also been eliminated. *Apprendi v. New Jersey*, 530 U.S. 466, 481, 120 S. Ct. 2348, 2358, 147 L. Ed. 2d 435, 449 (2000); *see, e.g., Williams v. New York*, 337 U.S. 241, 246, 69 S. Ct. 1079, 1082, 93 L. Ed. 1337, 1341 (1949) ("[B]oth before and since the American colonies became a nation, courts in this country and in England practiced a policy under which a sentencing judge could exercise a wide discretion in the sources and types of evidence used to assist him in determining the kind and extent of punishment to be imposed *within limits fixed by law*." (Emphasis added.)).

In sum, Iowa Code section 907.14(1), as construed in this opinion and applied in this case, does not give rise to a due process claim under either the Iowa or United States Constitutions.[2]

## IV. Due Process: Punishment Prior to Adjudication of Guilt.

Nail and Kucera launch a second due process attack, asserting that a civil penalty under section 907.14(1) cannot be imposed prior to an adjudication of guilt. In briefing, the parties engage in a battle at close quarters regarding whether the civil penalty in section 907.14(1) is criminal or civil in nature. Specifically, the State contends that the purpose of the

---

[2]Nail and Kucera further allege that plea bargains, where there is a potential for deferred judgment, cannot be knowingly and voluntarily entered as the potential amount of civil penalty under section 907.14(1) is uncertain. While our construction of the statute eliminates any vagueness problem in future cases, *State v. Speck*, 242 N.W.2d 287, 293 (Iowa 1976), there might be an issue as to whether our decision should be retroactively applied to defeat a challenge to the validity of Nail's and Kucera's guilty pleas. Nail and Kucera, however, requested the deferred judgment and then agreed at the district court hearing to separate the issue of granting a deferred judgment from their challenge to the civil penalty provision of Iowa Code section 907.14(1). Further, in the colloquy before the district court, they were clearly informed that the criminal penalty for first offense driving a motor vehicle while intoxicated included a $1000 fine. Under these circumstances, the suggestion that the guilty pleas were involuntary has a hollow ring.

"*civil* penalty" is to recover costs of investigating, prosecuting, and administering deferred judgments. Nail and Kucera contend that the "civil *penalty*" is primarily punitive in nature. *See Clinton Cmty. Sch. Dist. v. Anderson*, 322 N.W.2d 73, 75–76 (Iowa 1982) (discussing whether a "civil penalty" is civil or criminal in nature).

We believe that the parties have focused on the wrong issue. We recognize that generally speaking, due process requires that criminal penalties be imposed only after an adjudication of guilt. *Bell v. Wolfish*, 441 U.S. 520, 535 n.16, 99 S. Ct. 1861, 1872 n.16, 60 L. Ed. 2d 447, 466 n.16 (1979); *Hernandez-Lopez*, 639 N.W.2d at 237 n.5. The foundation of this requirement is the presumption of innocence. It would be fundamentally unfair to impose criminal penalties in a contested matter until the matter of guilt or innocence is determined. These are bedrock principles of constitutional law. We further recognize that a plea bargain and the grant of a deferred judgment are not ordinarily considered adjudications of guilt— the prosecution not being complete until a final judgment has been entered. *State v. Anderson*, 246 N.W.2d 277, 279 (Iowa 1976); *State v. Farmer*, 234 N.W.2d 89, 92 (Iowa 1975).

In this case, however, while there may be no *adjudication* of guilt, there has been an *admission* of guilt. Nail and Kucera have filed written guilty pleas and personally affirmed their guilt in open court. There is no question of guilt or innocence to be adjudicated. Any due process claim rooted in the presumption of innocence evaporates in light of their guilty pleas.

Further, the State is not seeking to force a deferred judgment on these defendants. In this case, deferred judgment offers the defendants the significant benefit of avoiding inevitable criminal conviction. The

defendants, moreover, specifically requested that the court grant them this benefit.

It is well-settled that a defendant who pleads guilty surrenders basic constitutional rights. *Boykin v. Alabama*, 395 U.S. 238, 243 n.5, 89 S. Ct. 1709, 1712 n.5, 23 L. Ed. 2d 274, 279–80 n.5 (1969). Where the defendants have admitted guilt and themselves requested a deferred judgment in order to avoid an adjudication of guilt, it cannot be maintained that an adjudication of the underlying criminal offense is a prerequisite to the imposition of a penalty, regardless of whether the penalty is considered civil or criminal.

A defendant who voluntarily seeks a deferred judgment to *avoid* a final criminal adjudication cannot *object* to the lack of one when statutory sanctions under a deferred judgment are imposed. As a result, we hold that the imposition of a civil penalty for deferred judgments does not affront fundamental fairness notions inherent in the due process guarantes of the Iowa and United States Constitutions.[3]

**V. Conclusion.**

The opinion of the district court holding Iowa Code section 907.14(1) unconstitutional is reversed. The case is remanded to the district court for further proceedings.

**REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.**

---

[3]We note that below, Nail and Kucera alleged that a double jeopardy-excessive fines issue potentially lurked in the shadows of this case. They claim that if a deferred judgment is subsequently revoked after the payment of a civil money penalty, the State could seek to impose the maximum fine authorized by law in addition to the civil penalty already collected. As a result, Nail and Kucera argue, the cumulative payments made by a defendant could exceed the maximum penalty established by the legislature for the offense. Nail and Kucera, however, have not had their deferred judgments revoked and, as a result, the issue is not ripe for review. Moreover, the Iowa legislature has amended Iowa Code section 908.11(5), which now reduces the fine in a revoked deferred judgment by the amount of the civil penalty previously assessed. 2007 Iowa Acts ch. 180, § 12. As a result, the issue is moot without the likelihood of repetition and is not addressed in this opinion.