# IN THE COURT OF APPEALS OF IOWA

No. 15-1679
Filed August 31, 2016

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**MICHAEL J. LOWE, JR.,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Cerro Gordo County, James M. Drew (Guilty Plea and Motion in Arrest of Judgment) and DeDra L. Schroeder (Judgment and Sentencing), Judges.


        Michael Lowe, Jr. appeals his convictions following his guilty pleas to second-degree sexual abuse and lascivious acts with a child.  **AFFIRMED.**


        Mark C. Smith, State Appellate Defender, and Bradley M. Bender, Assistant Appellate Defender, for appellant.

        Thomas J. Miller, Attorney General, and Elisabeth Reynoldson, Assistant Attorney General, for appellee.


        Considered by Potterfield, P.J., and Doyle and Tabor, JJ.

**DOYLE, Judge.**

Michael Lowe, Jr. appeals the judgment entered and sentence imposed following his convictions of second-degree sexual abuse and lascivious acts with a child. He challenges the denial of his motion in arrest of judgment, in which he argued the change in his drug regimen following his arrest rendered his guilty plea involuntary and unintelligent. He also contends his trial counsel was ineffective. Because the record shows the district court acted within its discretion in denying Lowe's motion, we affirm, and we preserve Lowe's claim of ineffective assistance of counsel for a possible postconviction-relief proceeding to allow the record to be fully developed.

## I. Background Facts and Proceedings.

In May 2015, the State filed a six-count trial information, which charged Lowe with two counts each of second-degree sexual abuse, third-degree sexual abuse, and lascivious acts with a child. Lowe agreed to plead guilty to one count of second-degree sexual abuse and one count of lascivious acts with a child, and in exchange, the State agreed to dismiss the remaining charges against Lowe. The State also agreed to recommend a twenty-five-year prison sentence on the sexual-abuse charge—which carried a seventy-percent mandatory minimum— and a ten-year prison sentence on the lascivious-acts charge, with the sentences running concurrently.

On July 28, 2015, Lowe entered a written plea agreement. The document, which contains twenty-two paragraphs and multiple subparagraphs, states: "I should not initial any paragraph of this document if I do not understand it or its contents are incorrect." Lowe initialed next to all the paragraphs and

subparagraphs contained therein. On the same day, Lowe also appeared before the district court for the plea colloquy. The court asked Lowe if he was under the care of a doctor and whether he took medications; Lowe responded "[y]es" to both. He was then asked, "Is there anything about your health or the medications that you're taking that make it difficult for you to understand court proceedings?" Lowe replied, "Not at this time." Lowe further confirmed he had enough time to review the trial information with his attorney and that he was satisfied with his attorney's services. At the close of the hearing, the court found Lowe voluntarily entered his pleas with a full understanding of his rights and the consequences of his pleas, determined a factual basis existed for each plea, and accepted Lowe's guilty pleas.

On September 9, 2015, Lowe filed a pro se motion in arrest of judgment "on the grounds that [he] was not of clear mind at the time of [the] plea agreement." He stated: "Although I was not under the influence of chemicals, I was still under serious withdrawal effects of prescribed morphine, Lortab and Adderall. These conditions are improving daily."

At the September 14, 2015 hearing on Lowe's motion in arrest of judgment, Lowe testified that at the time of his May 2015 arrest, he was taking numerous prescribed medicines, which he did not receive for the first two days he was in jail. He testified that prior to his arrest, he had been taking morphine and Lortab for a ten-year period due to chronic back pain and knee pain, and he had been taking Adderall or a different ADHD medication for a period of eight to ten years. Lowe claimed that the sudden cessation of his prescription medication caused him to experience withdrawal symptoms, which he described as being

"sick to [his] stomach" and "starting to have hallucinations," which "went on for a long period of time."

While in jail, Lowe was placed on a protocol to wean him off of morphine over a period of eleven to fourteen days, which occurred during the beginning to middle of June. Lowe testified this protocol only eased his withdrawal symptoms "[f]or maybe an hour or two a day, but it just put [him] to sleep." After the protocol ended, Lowe testified his withdrawal symptoms resumed: "All I could think about was the pain that I was in. Reality was in and out." Lowe testified that he spent "a lot of time in [his] bunk sleeping." He further testified he had difficulty paying attention without taking Adderall. When asked if there was anything about the written guilty plea that he did not understand, Lowe stated:

> At that time I don't know, but looking back at it now, like last week when I was looking at it, I looked at it, I was like I don't believe that I would have signed that. I—I wanted to get it over with. I wanted to do it and be done, and now I don't believe that that's the way I should have signed that.

Lowe was then asked if there was anything he still did not understand about the proceedings, to which he replied:

> I just don't know what my rights are as far as all of it or what's happening, you know. I understand that this is—I understand what's going on right now, but I don't know that I fully understood that—what the sentencing was, what I was agreeing to. Everything was coming at me so fast. It came like—the 27th was when it had to be in, and the next day—I saw you the day before that and then the next day it had to be signed. . . . And I was told that I had—you were giving me plenty of time to think about it, but the whole time I didn't look at nothin' so I had like three days to look at everything and then sign it and be done.

Nicole Lea Medina, a family nurse practitioner, also testified at the hearing. Medina saw Lowe during his intake at the county jail on May 20, 2015.

She saw Lowe again the next week to see how he was doing without morphine, and she did not notice any withdrawal symptoms at that time. Medina, who has experience with people undergoing drug withdrawal, testified that when she saw Lowe a final time on June 17, 2015, he was not experiencing withdrawal symptoms and was of sound mind. Medina testified that in her professional medical opinion, she did not believe Lowe was suffering from the effects of withdrawal. She further testified Lowe told her he felt better off the morphine.

On September 18, 2015, the court entered its order denying Lowe's motion. The order states:

> The evidence in the record does not support [Lowe's] claim that his guilty pleas were the result of clouded judgment caused by withdrawal symptoms. [Medina] . . . saw [Lowe] on June 17. She observed no withdrawal symptoms, and [Lowe] made no complaints in that regard. The court observed nothing unusual about [Lowe] when taking his guilty pleas. He appeared to understand all questions and answered them appropriately. Furthermore, [Lowe's attorney] advised [Lowe] that she saw no basis for the filing of a motion in arrest of judgment. Therefore, the court sees no valid reason for allowing [Lowe] to withdraw his guilty pleas.

The sentencing hearing was held on September 28, 2015. As recommended by the State, the court sentenced Lowe to twenty-five years in prison on the sexual-abuse charge and ten years on the lascivious-acts charge. However, the court ordered the sentences to run consecutively rather than concurrently, citing "the nature of the offenses, the fact that they're separate and distinct victims, and they're separate and distinct time frames according to [Lowe's] guilty pleas."

**II. Motion in Arrest of Judgment.**

On appeal, Lowe argues the district court abused its discretion in denying his motion in arrest of judgment because he was suffering from the effects of withdrawal from his medications at the time he entered his guilty pleas, which prevented him from understanding the plea proceedings and rendered his pleas unknowing and involuntary. We review the denial of a motion in arrest of judgment for an abuse of discretion. *See State v. Smith*, 753 N.W.2d 562, 564 (Iowa 2008). "An abuse of discretion will only be found where the trial court's discretion was exercised on clearly untenable or unreasonable grounds." *Id.* A ruling is untenable when based on an erroneous application of law. *See id.*

"It is well-settled that a defendant who pleads guilty surrenders basic constitutional rights." *State v. Nail*, 743 N.W.2d 535, 545 (Iowa 2007). In order to be valid, the defendant must intentionally relinquish known rights. *See State v. Philo*, 697 N.W.2d 481, 488 (Iowa 2005). In other words, the plea must be voluntary and intelligent. *See id.* "To enter a guilty plea voluntarily and intelligently means the defendant has a full understanding of the consequences of a plea." *Id.* (citation omitted).

Lowe failed his burden of showing he entered his pleas unknowingly and involuntarily because his withdrawal symptoms prevented him from thinking clearly. Medina, who has experience treating persons undergoing withdrawal, testified that Lowe did not exhibit any withdrawal symptoms when she saw him on three separate occasions in May and June 2015, prior to his entry of the guilty pleas on July 28. Lowe did not complain to Medina of any withdrawal symptoms. In fact, Lowe told Medina he felt better after he stopped taking morphine. In

Medina's professional medical opinion, Lowe was not experiencing withdrawal symptoms. Lowe failed to present any evidence, aside from his own testimony, to refute Medina's testimony. Furthermore, the district court judge who considered the motion in arrest of judgment was the same judge who accepted Lowe's guilty pleas; the order notes the court "observed nothing unusual about [Lowe] when taking his guilty pleas" and that Lowe "appeared to understand all questions and answered them appropriately." On the record before us, the court reasonably exercised its discretion in denying Lowe's motion in arrest of judgment.

### III. Ineffective Assistance of Counsel.

Lowe also raises a claim of ineffective assistance of counsel. We review such claims de novo. *See State v. Clay*, 824 N.W.2d 488, 494 (Iowa 2012). A valid ineffective-assistance-of-counsel claim exists when counsel fails to perform in an objectively reasonable manner under prevailing professional standards and that failure prejudices the defendant. *See id.* at 494-95. Although we ordinarily preserve ineffective-assistance claims for postconviction-relief proceedings, we will resolve them on direct appeal when the record is adequate. *See id.* at 494.

Lowe acknowledges that a medical expert would ordinarily be necessary to demonstrate that the alteration of his medication regimen rendered his pleas unknowing and involuntary. *See Castro v. State*, 795 N.W.2d 789, 795 (Iowa 2011). He argues his trial counsel's failure to procure an expert witness on the issue of the voluntariness of his guilty pleas was a breach of an essential duty. The record before us is silent as to the existence of a medical expert who would support Lowe's claims. Lowe is free, however, to raise this claim in a

postconviction-relief proceeding, which allows for full development of the record. *See State v. Johnson*, 784 N.W.2d 192, 198 (Iowa 2010) (noting that if a claim of ineffective assistance cannot be addressed on direct appeal, "the court must preserve it for a postconviction-relief proceeding, regardless of the court's view of the potential viability of the claim"). Accordingly, this issue is preserved for a postconviction-relief proceeding, should Lowe choose to bring one.

**AFFIRMED.**