**IN THE COURT OF APPEALS OF IOWA**

No. 22-0273
Filed April 26, 2023

**MARK J. DEN HARTOG,**
Plaintiff-Appellant,

**vs.**

**IOWA DEPARTMENT OF HUMAN SERVICES,**
Defendant-Appellee.
_____

Appeal from the Iowa District Court for Polk County, Celene Gogerty, Judge.

A chiropractor appeals from an Iowa Code chapter 17A (2019) proceeding.

**AFFIRMED.**

Michael M. Sellers and Trent W. Nelson of Sellers Galenbeck & Nelson, Clive, for appellant.

Brenna Bird, Attorney General, and Lisa Reel Schmidt, Assistant Attorney General, for appellee.

Heard by Bower, C.J., and Ahlers and Buller, JJ.

**AHLERS, Judge.**

Mark Den Hartog is a chiropractor who enrolled in the Iowa Medicaid program and provided chiropractic services to Medicaid patients.[1] In 2005 and 2006, an audit revealed Den Hartog's documentation of services was insufficient in a number of respects to support payment from Medicaid. Den Hartog was required to repay several thousand dollars of money received from Medicaid as a result. Fast forwarding to 2014 and 2015, a federal contractor performed a Payment Error Rate Measurement (PERM) audit of Iowa Medicaid. As part of the PERM audit, the contractor randomly requested documents from Den Hartog. Den Hartog did not provide the necessary documentation. This eventually led to an audit and administrative proceedings that resulted in the Iowa Department of Human Services,[2] which oversees Iowa's Medicaid program, terminating Den Hartog's participation in the program. The proceeding also resulted in an order requiring Den Hartog to repay Iowa Medicaid for money he received for Medicaid services for which Den Hartog was unable to provide the required documentation.

Den Hartog petitioned for judicial review under Iowa Code chapter 17A (2019).[3] The district court found the relevant administrative rules are not

---

[1] Medicaid is a cooperative state-federal program. *Colwell v. Iowa Dep't of Human Servs.*, 923 N.W.2d 225, 237 (Iowa 2019). The program is "designed to help the states provide medical assistance to financially-needy individuals, with the assistance of federal funding." *Lankford v. Sherman*, 451 F.3d 496, 504 (8th Cir. 2006).

[2] In 2022, the Iowa Department of Human Services merged with the Iowa Department of Health to form the Iowa Department of Health and Human Services. Because that had not occurred until after the underlying proceedings of this case, our references to the department are to the Iowa Department of Human Services.

[3] Den Hartog brought two separate petitions, one related to termination of his participation in Medicaid and the other related to the recoupment order, and the district court eventually consolidated them.

unconstitutionally vague; Den Hartog received sufficient notice of the issues addressed in the administrative proceedings; the administrative proceedings did not violate Iowa Code section 249A.56; and substantial evidence supported that Iowa Medicaid overpaid Den Hartog and was entitled to repayment.

Den Hartog appeals. He claims he did not receive adequate notice "to terminate him for a violation of Iowa Administrative Code rule 441-79.3(3)"; "the department exceeded its authority when it prosecuted [him] for fraud"; "the department . . . applied the wrong documentation requirement in determining recoupment and termination of [his] participation in Medicaid"; and, if the department properly interpreted the documentation requirements, then they are unconstitutionally vague. Finally, Den Hartog seeks legal fees under section 625.29. We will address each claim separately, although not necessarily in order.

## I.     Scope and Standard of Review

When reviewing a judicial review action, "our job is to determine whether in applying the applicable standards of review under section 17A.19(10), we reach the same conclusions as the district court." *Colwell*, 923 N.W.2d at 231. "The petitioner challenging agency action has the burden of demonstrating the prejudice and invalidity of the challenged agency action." *Id.*

> The applicable standard of review depends upon the error asserted by the petitioner. When the legislature has clearly vested interpretive authority with an agency, we defer to the agency's interpretation of the statutory language and reverse only when the agency's interpretation is "irrational, illogical, or wholly unjustifiable." However, when the legislature has not clearly vested interpretive authority with an agency, our standard of review is for errors of law. "To determine whether an agency has been given authority to interpret statutory language, 'we carefully consider "the specific

language the agency has interpreted as well as the specific duties and authority given to the agency"""" regarding the particular statutes.

*Id.* at 231–32 (internal citations omitted). With respect to Den Hartog's constitutional challenges to various administrative rules, our review is de novo. *See Endress v. Iowa Dep't of Human Servs.*, 944 N.W.2d 71, 76 (Iowa 2020). Regarding the request for attorney fees, we review for legal error. *See id.*

## II. Notice

We first address Den Hartog's contention that the department could not terminate his participation in Medicaid due to a violation of Iowa Administrative Code rule 441-79.3 because the rule was not specifically referenced in the notice of termination. The written notice of termination explained that the department was authorized to terminate Den Hartog's participation in Medicaid under Iowa Administrative Code rule 441-79.2(2), which permits the imposition of sanctions for the following relevant conduct:

> a. Presenting or causing to be presented for payment any false, intentionally misleading, or fraudulent claim for services or merchandise.
> b. Submitting or causing to be submitted false, intentionally misleading, or fraudulent information for the purpose of obtaining greater compensation than that which the person is legally entitled, including charges in excess of usual and customary charges.
> . . . .
> i. Violating any provision of Iowa Code chapter 249A, or any rule promulgated pursuant thereto, or violating any federal or state false claims Act, including but limited to Iowa Code chapter 685.
> . . . .
> *l.* Breaching any settlement or similar agreement with the department, or failing to abide by the terms of the agreement with any other entity relating to, or arising out of, the state medical assistance program.

The director ultimately found Den Hartog's termination was authorized under rule 441-79.2(2)(i) and (*l*). The director determined Den Hartog violated

paragraph (i) by "failing to comply with the recordkeeping requirements within rule 441-79.3." With respect to paragraph (*l*), the director determined Den Hartog violated a 2010 provider agreement because the agreement required Den Hartog to "maintain books, records and documents which sufficiently and properly document and calculate all charges billed to the [d]epartment."

Den Hartog complains that he did not understand the department based its decision to terminate his participation in Medicaid due to his failure to comply with documentation requirements and instead read the notice as terminating his participation due to fraud. But that is not the department's fault. "The notice from [the department] need only 'be reasonably calculated to apprise interested parties of the pendency of the action.'" *Endress*, 944 N.W.2d at 78 (citation omitted). The notice did that here. The notice Den Hartog received informed him that his participation in Medicaid was being terminated and listed the rules the department believed authorized his termination. *See id.* One of the rules listed was rule 441-79.2(2)(i), which gave the department the authority to sanction him based on a violation of any agency rule promulgated pursuant to Iowa Code chapter 249A, the Medical Assistance Act. The agency rules promulgated pursuant to Iowa Code chapter 249A include rule 441-79.3(3), which details the documentation requirements.

If the notice had merely cited rule 441-79.2(2)(i) without any additional detail, Den Hartog's claim that he didn't know the department's decision was based on rules related to inadequate documentation may be more persuasive. But the notice included much more. The notice laid out in great detail exactly what the department found that Den Hartog did that triggered the department's action, and

that detail consisted almost exclusively of transgressions related to documentation. The notice included the following details. An investigator made an unannounced visit to Den Hartog's office following his inability to provide the requested documentation for the PERM audit. The unannounced on-site review occurred because Den Hartog "did not have proper documentation to support charges paid for by [Iowa Medicaid]." A review of the documentation Den Hartog provided at the on-site visit led the investigator to believe Den Hartog was creating documentation while the investigator was present, so the investigator asked Den Hartog to print the records while the investigator watched. Based on Den Hartog's actions following that request, the investigator confirmed that Den Hartog was creating documentation during the visit, and, when confronted about "this serious offense," Den Hartog confirmed that he was creating documents.

The above-described details included in the written notice were sufficient to put Den Hartog on notice that he was being sanctioned for violating rules related to documentation, which would include rule 441-79.3(3). The fact that Den Hartog knew that sanction was based on documentation is confirmed by Den Hartog's attorney's opening statement made to the administrative law judge (ALJ) during the hearing Den Hartog received after appealing the department's sanction. At the beginning of that opening statement, Den Hartog's counsel told the ALJ:

> We think that . . . one of the fundamental questions that you, as the adjudicator, will have to figure out is whether or not Dr. Den Hartog was in compliance or not with the documentation requirements and whether or not all of the accusations that have been made against him actually deal with a demonstration by the State of what they claim is the requirement for documentation.

These comments made at the beginning of Den Hartog's opening statement support the conclusion that Den Hartog was adequately put on notice of the documentation claim, as they show that Den Hartog was well aware that documentation was the key component of the department's decision to sanction him.

Den Hartog was properly notified that his compliance with documentation requirements was at issue and should have reasonably understood his noncompliance was the root of his termination from the Medicaid program. We conclude he had sufficient notice of the grounds for terminating his participation in Medicaid.

## III. Vagueness of Iowa Administrative Code rule 441-79.2(2)(i), (*l*)

Den Hartog also attempts to challenge the sufficiency of the notice by attacking the constitutionality of rule 441-79.2(2)(i) and (*l*) as failing the "test in *Greenawalt* [*v. Zoning Bd. of Adjustment of the City of Davenport*, 345 N.W.2d 537, 545 (Iowa 1984)] for vagueness" because both paragraphs "require a person to guess" as to the basis for finding either paragraph applicable. "Among other things, the Due Process Clause prohibits enforcement of vague statutes under the void-for-vagueness doctrine." *State v. Nail*, 743 N.W.2d 535, 539 (Iowa 2007). *Greenwalt* recognized,

> A civil statue is unconstitutionally vague under the [D]ue [P]rocess [C]lause of the [F]ourteenth [A]mendment to the United States Constitution when its language does not convey a sufficiently definite warning of proscribed conduct, when measured by common understanding or practice. Thus, when persons must necessarily guess at the meaning of the statute and its applicability, the statute is unconstitutionally vague.

345 N.W.2d at 545 (citation omitted). However, when reviewing a rule for unconstitutional vagueness, we begin with the presumption the challenged rule is constitutional and give it "'*any* reasonable construction' to uphold it." *See Nail*, 743 N.W.2d at 539 (citation omitted). And "challengers . . . must refute 'every reasonable basis' upon which a [rule] might be upheld." *Id.* at 540 (citation omitted). A rule "may be saved from constitutional deficiency, moreover, if its meaning is fairly ascertainable by reference to other similar statutes or other statutes related to the same subject matter." *Id.*

With that in mind, we conclude paragraphs (i) and (*l*) of rule 441-79.2(2) are not unconstitutionally vague. Paragraphs (i) and (*l*) identify when "[t]he department may impose sanctions" for violating other rules, statutes, or agreements. Iowa Admin. Code r. 441-79.2(2)(i), (*l*). Paragraph (i) limits its application to violations of specific Code chapters, associated rules, and state and federal false claim acts. Iowa Admin. Code r. 441-79.2(2)(i). The meaning of the paragraph is clear, and its applicability is discernable. *See Nail*, 743 N.W.2d at 540 (permitting consideration of relevant caselaw and statutes when considering a void-for-vagueness challenge instead of "subjective expectations of particular [people] based on incomplete legal knowledge"). The same is true for paragraph (*l*), which permits the imposition of sanctions when a party breaches an agreement between the party and the department or fails to follow the terms of another agreement the party entered that relates to the medical assistance program. Iowa Admin. Code r. 441-79.2(2)(*l*). So, the party is not required to guess as to when paragraph (*l*) applies; rather the party must simply be aware of the agreements the party entered related to the Medicaid program and the terms of those agreements.

To the extent Den Hartog attempts to challenge rule 441-79.2(2)(i) and (*l*) as unconstitutionally vague, he fails. As to any other potential due process claims he attempts to advance relating to rule 441-79.2(2)(i) and (*l*), they are not developed for our review, so we consider them waived. *See State v. Tyler*, 867 N.W.2d 136, 166 n.14 (Iowa 2015) (finding waiver of an appellate issue when only passing reference is made to it).

## IV. Iowa Administrative Code rule 441-79.3

### A. Documentation requirements

Next, Den Hartog contends the department applied the wrong documentation requirement under rule 441-79.3 when it determined recoupment and termination was justified based on his failure to provide sufficient documentation of services provided to Medicaid patients. Rule 441-79.3(2) explains, "A provider of service shall maintain complete and legible medical records for each service for which a charge is made to the medical assistance program. Required records shall include any records required to maintain the provider's license in good standing." Den Hartog argues he only had to comply with the documentation requirements in rule 441-79.3(2)(d) instead of rule 441-79.3(2)(c). He reasons that rule 441-79.3(2)(d)(37) sets out specific documentation requirements for chiropractic services, so it should apply over the general documentation requirements provided for in rule 441-79.3(2)(c). *See Christiansen v. Iowa Bd. of Educ. Exam'rs*, 831 N.W.2d 179, 189 (Iowa 2013) ("One such rule is that the more specific provision controls over the general provision."). But Den Hartog fundamentally misconstrues the documentation requirements within rule 441-79.3(2) as an "either or" situation between

paragraphs (c) and (d). Instead, upon reading rule 441-79.3(2), it becomes clear paragraphs (c) and (d) are to be read together—paragraph (c) provides the general documentation requirements applicable to all services while paragraph (d) provides *additional* documentation requirements for specific services.

Rule 441-79.3(2)(c)(2) provides a list of general documentation requirements for all medical services and explains, "The medical record shall reflect the reason for performing the service or activity, substantiate medical necessity, and demonstrate the level of care associated with the service." The rule requires the documentation to include thirteen listed items, *see* Iowa Admin. Code r. 441-79.3(2)(c)(2)(1)–(13),

> unless the listed item is not routinely received or created in connection with a particular service or activity and is not required to document the reason for performing the service or activity, the medical necessity of the service or activity, or the level of care associated with the service or activity.

Iowa Admin. Code r. 441-79.3(2)(c)(2). Rule 441-79.3(2)(d) identifies additional documentation requirements for specific medical services, with rule 441-79.3(2)(d)(37) specifically applying to chiropractors.

We conclude the documentation required by rule 441-79.3(2)(d) is additional to that required by rule 441-79.3(2)(c)(2). We reach this conclusion for three reasons. First, rule 441-79.3(2)(c)(2) declares that the documentation listed is "for all services." By definition, chiropractic services would be part of "all services," so chiropractors are required to meet the documentation requirements of rule 441-79.3(2)(c)(2).

Second, the language of rule 441-79.3(2)(d) supports the conclusion that it is listing additional documentation requirements:

> The medical record for the following services must include, *but is not limited to*, the items specified below (unless the listed item is not routinely received or created in connection with the particular service or activity and is not required to document the reason for performing the service or activity, its medical necessity, or the level of care associated with it).

(Emphasis added.) The rule goes on to add requirements for various types of medical care providers, with chiropractors required to submit documentation consisting of "service or office notes or narratives" and "x-ray results." Iowa Admin. Code r. 441-79.3(2)(d)(37). If, as Den Hartog claims, the documentation required by rule 441-79.3(2)(d)(37) is all the documentation required of chiropractors, the "but is not limited to" language emphasized above would be unnecessary. What would be the other documentation that necessitates the "but is not limited to" language if the documentation described in rule 441-79.3(2)(d) is all that is required? We follow the same rules of construction with administrative rules as we do with statutes. *See Office of Consumer Advoc. v. Iowa Util. Bd.*, 744 N.W.2d 640, 643 (Iowa 2008). One of those rules is we do not interpret a rule in such a way as to make any part of it superfluous. *See Beverage v. Alcoa, Inc.*, 975 N.W.2d 670, 685 (Iowa 2022). As Den Hartog's construction of the rule makes the "but is not limited to" language meaningless, we reject his construction and conclude the documentation required by rule 441-79.3(2)(d) is additional documentation to that required by rule 441-79.3(2)(c)(2).

Third, Den Hartog's construction makes little practical sense. *See Chavez v. MS Tech. LLC*, 972 N.W.2d 662, 667 (Iowa 2022) (noting that courts "look for 'an interpretation that is reasonable, best achieves the statute's purpose, and avoids absurd results'" (quoting *Holstein Elec. v. Breyfogle*, 756 N.W.2d 812, 815

(Iowa 2008))). Rule 441-79.3(2)(d) lists thirty-nine types of medical care providers with different documentation requirements for each.[4] We are hard put to come up with a type of medical care provider that is not covered by the thirty-nine types of providers listed in the rule. Even if we were able to come up with a unicorn provider not covered in rule 441-79.3(2)(d), accepting Den Hartog's construction of rule 441-79.3(2)(c)(2) and (d) would require us to conclude that the thirteen pieces of information required to be documented by rule 441-79.3(2)(c)(2) apply only to the unicorn, while every other provider (which may include all providers if there is no unicorn) only has to submit the limited information specified by the subparagraph of rule 441-79.3(2)(d) applicable to that type of provider. Given the

---

[4] The list of providers is physicians (MDs and DOs); pharmacists; dentists; podiatrists; certified registered nurse anesthetists; other advanced registered nurse practitioners; optometrists and opticians; psychologists; clinic service providers; providers at rural health clinics or federally qualified health centers; providers at community mental health centers; screening center service providers; family planning service providers; maternal health center service providers; birthing center service providers; ambulatory surgical center service providers; hospital service providers; state mental hospital service providers; providers at skilled nursing facilities, nursing facilities, and nursing facilities for persons with mental illness; providers at intermediate care facilities for persons with mental retardation; providers at psychiatric medical institutions for children; hospice service providers; providers at rehabilitation agencies; home- and community-based habilitation service providers; providers of remedial services and rehabilitation services for adults with a chronic mental illness; providers at area education agencies and location education agencies; home health agency service providers; providers at independent laboratories; ambulance service providers; providers for lead investigation agencies; providers of medical supplies; orthopedic shoe dealer service providers; case management service providers (including home- and community-based service case management service providers); early access service coordinator service providers; home- and community-based waiver service providers (other than case management service providers); physical therapists; chiropractors; hearing aid dealers and audiologists; and behavioral health service providers. Iowa Admin. Code r. 441-79.3(2)(d)(1)–(39).

basic information required by rule 441-79.3(2)(c)(2),[5] we find it implausible that such information is required to be submitted only by a unicorn provider not listed in rule 441-79.3(2)(d).  *See id.*  The rules make much more practical sense by construing them in such a way as to require all providers to submit the documentation required by rule 441-79.3(2)(c)(2) while requiring specific types of providers to supply the additional documentation listed in rule 441-79.3(2)(d) applicable to that type of provider.

So, when reading rule 441-79.3(2) as a whole, it is clear that documentation requirements for chiropractic services, like those provided by Den Hartog, include the thirteen listed items from rule 441-79.3(2)(c)(2)[6] plus "service or office notes or narratives" and "x-ray results" as required by rule 441-79.3(2)(d)(37).  Because Den Hartog was required to comply with the documentation requirements in rule 441-79.3(2)(c)(2) and 441-79.3(2)(d)(37), the department did not err by terminating Den Hartog's participation in Medicaid and determining recoupment was necessary based on Den Hartog's failure to comply with the documentation requirements in rule 441-79.3(2)(c)(2).

### B.    Vagueness

Because we conclude Den Hartog's interpretation of rule 441-79.3(2) is

---

[5] Rule 441-79.3(2)(c)(2) requires such basic information as the patient's complaint, symptom, and diagnosis; the patient's medical or social history; examination findings; diagnostic test reports and results; goals or needs of the patient; physician orders and prior authorizations; medication records; etc.

[6] Of course, the provider may omit an item from the list of thirteen if the listed item is not routinely received or created in connection with a particular service or activity and is not required to document the reason for performing the service or activity, the medical necessity of the service or activity, or the level of care associated with the service or activity.  Iowa Admin. Code r. 441-79.3(2)(c)(2).

inaccurate, he argues it must be "too vague to provide a sufficient warning of required conduct" and once again references *Greenawalt.* To reiterate, *Greenawalt* recognized:

> A civil statute is unconstitutionally vague under the [D]ue [P]rocess [C]lause of the [F]ourteenth [A]mendment to the United States Constitution when its language does not convey a sufficiently definite warning of proscribed conduct, when measured by common understanding or practice. Thus, when persons must necessarily guess at the meaning of the statute and its applicability, the statute is unconstitutionally vague.

345 N.W.2d at 545 (citation omitted). Review of rule 441-79.3(2) makes clear it is not unconstitutionally vague. As discussed above, the interplay between rule 441-79.3(2)(c)(2) and rule 441-79.3(2)(d) is straightforward and provides clear guidelines for medical providers seeking Medicaid payment. Den Hartog complains that the language found in both paragraphs permitting medical documentation to omit an item "not routinely received or created in connection with the particular service or activity and is not required to document the reason for performing the service or activity, its medical necessity, or the level of care associated with it," *see* Iowa Admin. Code r. 441-79.3(2)(c)(2), (d), is not clear enough for a medical provider to understand what documentation requirements must be followed and what information can be omitted. We disagree. A medical provider should have a base level of knowledge as to what information is or is not routinely received or created for a particular service as established by prior practice and prevailing norms within the medical community. We conclude rule 441-79.3(2) is not unconstitutionally vague.

## V.      Department Authority

Next, Den Hartog argues "the department exceeded its authority when it

prosecuted [him] for fraud" because Iowa Code section 249A.56 states, "violations of law relating to . . . medical assistance . . . shall be prosecuted by county attorneys."[7]   The Marion County Attorney had initiated criminal proceedings against Den Hartog for tampering with records after the Iowa Medicaid Fraud Control Unit shared information about Den Hartog, but ultimately the county attorney dismissed the charges with prejudice.  So, Den Hartog argues that should be the end of the matter.

Den Hartog is mistaken for a number of reasons.  First, as the State explains, the plain meaning of section 249A.56 grants criminal prosecution authority to the county attorney, with the assistance of area prosecutors "as required."  Chapter 249A does not specifically define "prosecute."  *See* Iowa Code § 249A.2.  However, a commonly accepted definition is "to institute and pursue a criminal action against (a person)."  *Prosecute*, Black's Law Dictionary (11th ed. 2019).  So, a straight-forward reading of section 249A.56 causes us to conclude that the county attorney may institute and pursue *a criminal action* against a person for violating a law related to medical assistance.  It does not limit non-criminal proceedings in any way.

Second, to interpret section 249A.56 to limit any investigation and enforcement of violations of medical assistance laws and agency rules to the county attorney would render other sections of chapter 249A ineffective.  For

---

[7] It is not entirely clear from his brief if Den Hartog is challenging the department's authority to terminate his participation in Medicaid due to fraudulent conduct under rule 441-79.2(2)(a) and (b), which the director ultimately determined were not supported bases for terminating his participation, or if he is more broadly asserting the department did not have the authority to terminate his participation in Medicaid and require repayment generally.

example, section 249.44(1) gives the department director and attorney general the authority to "bring an action for a temporary restraining order" "[c]oncurrently with . . . the imposition of a sanction." Section 249A.47 permits the department to impose civil penalties upon its finding certain criteria are met. These sections would be ineffective if we were to read section 249A.56 as Den Hartog urges, and that cannot be true. *See* Iowa Code § 4.4(2) ("In enacting a statute, it is presumed . . . [t]he entire statute is intended to be effective.").

Third, state participation in Medicaid is voluntary, but when a state does participate in Medicaid it must comply with federal statutes and regulations. *Colwell*, 923 N.W.2d at 237; *see Harris v. McRae*, 448 U.S. 297, 301 (1980) ("Although participation in the Medicaid program is entirely optional, once a State elects to participate, it must comply with the requirements of Title XIX."). The Code of Federal Regulations requires the department to "conduct a full investigation" into alleged abuses of the Medicaid program. 42 C.F.R. § 455.15 (2015). That investigation "must continue" until any number of conclusions are reached, those conclusions include a resolution between the department and provider wherein the department terminates the provider's participation in Medicaid or seeks recovery of payments made to the provider. *Id.* § 455.16(c)(2), (3). The department cannot comply with these federal requirements and more if Iowa Code section 249A.56 were to limit investigations and imposition of sanctions for fraud or other wrongdoing to the county attorney. And "[when] state and federal law directly conflict, state law must give way." *Huck v. Wyeth, Inc.*, 850 N.W.2d 353, 362–63 (Iowa 2014) (alteration in original) (citation omitted). So even if we were to adopt Den Hartog's interpretation of section 249A.56, it would be preempted by federal

law. The simpler and clearer answer is that section 249A.56 actually grants authority to criminally prosecute an individual for violating a medical assistance law to the county attorney. It does not limit the department from investigating claims of fraud or other wrong doing in civil proceedings like this one.

## VI. Legal Fees

Finally, Den Hartog seeks legal fees under Iowa Code section 625.29. However, this section only permits an award of legal fees if the party seeking them prevails. Iowa Code § 625.59(1). As Den Hartog is not the prevailing party, he cannot recover legal fees under this section.

## VII. Conclusion

The department provided Den Hartog sufficient notice, correctly determined Den Hartog had to comply with the documentation requirements in Iowa Administrative Code Rule 441-79.3(2)(c)(2), and had the authority to investigate and sanction Den Hartog. Iowa Administrative Code rules 441-79.2(2)(i), (*l*), and 441-79.3(2) are not unconstitutionally vague. Den Hartog is not entitled to attorney fees. We affirm the district court.

**AFFIRMED.**