# IN THE SUPREME COURT OF IOWA

No. 18–0464

Filed February 8, 2019

**ROBERT F. COLWELL JR.,**

Appellee,

vs.

**IOWA DEPARTMENT OF HUMAN SERVICES,**

Appellant.

Appeal from the Iowa District Court for Polk County, Arthur E. Gamble, Judge.

An agency appeals an adverse judicial review decision by the district court. **AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

Thomas J. Miller, Attorney General, J. Bradley Horn and Gretchen Kraemer, Assistant Attorneys General, for appellant.

Rebecca A. Brommel of Brown, Winick, Graves, Gross, Baskerville and Schoenebaum, P.L.C., for appellee.

**WIGGINS, Justice.**

A managed care organization (MCO) denied reimbursement of claims submitted by a dentist who contracts with the MCO as a provider. The dentist sought review by the Iowa Department of Human Services (DHS) of the MCO's denials of reimbursement. DHS denied the dentist's requests for a state fair hearing, reasoning that the issue was a contract dispute between the MCO and the dentist and thus was not appealable to DHS under Iowa law. The dentist filed a petition for judicial review, challenging DHS's denials of his requests for state fair hearings. The district court agreed with the dentist and found DHS incorrectly interpreted Iowa Code section 249A.4(11) (2016).[1] The district court held Iowa law "allows and requires DHS to create a review mechanism for providers." The district court also held under Iowa Administrative Code rule 441—7.1 (2014),[2] the dentist had both an individual right and the right as a provider on behalf of his patients to be heard at a state fair hearing. Further, the district court held the dentist could seek reimbursement from his indigent patients for claims not covered or reimbursed by the MCO. Lastly, the district court found DHS must pay for the dentist's attorney fees because DHS's decision to deny a state fair hearing was "legally unsound, unreasonable and unsupported by substantial evidence." DHS appeals on all issues.

On appeal, we find section 249A.4(11) does not require DHS to give the dentist a state fair hearing. However, we find the administrative rules do require DHS to give the dentist a state fair hearing. We also find the dentist may bill patients for services not covered or reimbursed by the MCO, but only to the extent as set forth in this opinion. Finally, we reverse

---

[1] All Iowa Code sections refer to the 2016 Code unless otherwise noted.

[2] All Iowa Administrative Code rules refer to the October 29, 2014 rules.

the judgment of the district court awarding the dentist attorney fees under Iowa Code section 625.29(1).

Therefore, we remand the case back to the district court to enter a judgment consistent with this opinion. After doing so, the district court shall remand the case back to DHS to provide a state fair hearing appeal to the dentist.

## I. Background Facts and Proceedings.

In 2013, the Iowa legislature established the Iowa Health and Wellness Plan (the Plan), which expanded healthcare coverage for low-income, uninsured adults who were not previously eligible for Medicaid. *See* 2013 Iowa Acts ch. 138, div. XXXIII (codified at Iowa Code ch. 249N (2014)). The Plan includes coverage for certain dental benefits—i.e., the Dental Wellness Program. *See id.* § 170 (codified at Iowa Code § 249N.5(1) (2014)).

Beginning in April 2014, DHS and Iowa Medicaid Enterprise (IME) entered into a series of amended contracts with Delta Dental of Iowa, establishing Delta Dental as an MCO for the dental benefits. As such, Delta Dental conducts all aspects of the implementation and ongoing management of the Dental Wellness Program, including processing claims and building a network of dentists to serve in the program.[3] Pursuant to the contract, DHS and IME make capitated payments to Delta Dental for Delta Dental's administration of the plan. These capitated payments are the total obligation of DHS with respect to the costs of dental care and services provided. Delta Dental is responsible for paying providers for all covered services rendered. In the event a payment is in dispute, the contract provides, "[Delta Dental] shall have a system in place for Enrollees

---

[3]DHS maintains the responsibility of determining who is eligible for the wellness plan.

and Providers acting upon their behalf, which includes a Grievance process, an Appeal Process, and access to the Agency's fair hearing system."

Dr. Robert Colwell is a dentist practicing in Council Bluffs, Iowa, and Bellevue, Nebraska. Colwell became a participating dentist in Delta Dental's network in April 2014. At that time, he entered into a Participating Dentist's Dental Wellness Plan Agreement with Delta Dental, which incorporated the Delta Dental Wellness Plan Office Manual (Office Manual). Gretchen Hageman, government program director at Delta Dental, testified the documents Delta Dental uses with it its providers are approved by DHS. This includes the Office Manual that incorporates the state fair hearing appeal process.

Colwell provided services to Plan participants until late 2014. He submitted claims to Delta Dental for the Plan patients, and Delta Dental denied reimbursement for a number of those claims in whole or in part for a lack of documentation and other errors.

Shortly thereafter, in January 2015, Delta Dental terminated its provider agreements with Colwell and his associates. Colwell appealed, which ultimately led to a settlement agreement between the parties. The 2016 settlement agreement reinstated Colwell as a provider and allowed Colwell to seek an appeal for claims denied in whole or in part prior to January 2015, pursuant to the formal appeals process set forth in the 2016 Office Manual. Colwell appealed those denied claims.

On October 12, 2016, Delta Dental issued two letters stating its final decisions on Colwell's appeals. Delta Dental upheld nearly all of its prior decisions denying claims Colwell submitted. On November 10, Delta Dental sent Colwell an addendum to the October 12 letters, stating, "You have the right to seek a state fair hearing with respect to the claims that

were re-reviewed and disallowed. The state fair hearing process is outlined in the DWP Provider Manual." The DWP Provider Manual is the Office Manual incorporated in the Participating Dentist's Dental Wellness Plan Agreement with Delta Dental.

Colwell sought a state fair hearing for the denied claims. In a letter to DHS, Colwell wrote, "We are making an appeal on behalf of . . . our patients, the enrollees." DHS declined to grant Colwell a state fair hearing, saying, "The issue you appealed is not an issue [DHS] can grant a hearing on. This appears to be a contract issue between Delta Dental and yourself." Colwell requested that DHS reconsider, stating he satisfied the criteria for which DHS could grant a state fair hearing for a provider. Again, DHS denied Colwell's request to reopen the appeal based on its conclusion this was a contract issue between Delta Dental and Colwell because Colwell's claims arose from the 2016 settlement agreement.

The 2016 Office Manual, in effect at all times material to this action, states,

> Covered Enrollees, and Participating Dentists acting on the behalf of a Covered Enrollee, have access to the Grievance System.
>
> This system includes an Appeals and Complaint Process and access to the Iowa Department of Human Service's state fair hearing system.

The Office Manual further states, "A Participating Dentist may request the hearing if the State permits the Participating Dentist to act as the Covered Enrollee's authorized representative." The terms of these provider contracts depend upon what the state allows.[4]

---

[4]Federal law requires states to create a review process for Medicaid recipients, but does not require states to provide such a process for providers. 42 C.F.R. § 438.402(a) (2016) ("Each MCO, PHIP, and PAHP must have a grievance and appeal system in place

Iowa Code section 249A.4(11) creates the review process mandated by federal law. It provides the DHS director "[s]hall provide an opportunity for a fair hearing . . . to an individual whose claim for medical assistance under this chapter is denied or is not acted upon with reasonable promptness." Iowa Code § 249A.4(11). DHS created chapter 7 to define the nature of the appeal rights. *See* Iowa Admin. Code r. 441—7. Rule 441—7.1 states in relevant part,

> "*Aggrieved person*" means a person against whom the department has taken an adverse action. This includes a person who meets any of the following conditions:
>
> . . . .
>
> 7.     For providers, a person or entity:
>
> ●    Whose claim for payment or request for prior authorization of payment has been denied in whole or in part and who states that the denial was not made according to department policy. Providers of Medicaid services must accept reimbursement based on the department's methodology.
>
> . . . .
>
> ●    Who has been notified that the managed care reconsideration process has been exhausted and who remains dissatisfied with the outcome.
>
> . . . .
>
> ●    Who, as a managed care organization (MCO) provider or Iowa plan contractor when acting on behalf of a member, has a dispute regarding payment of claims.

*Id.* r. 441—7.1. Colwell sought judicial review, claiming he was entitled to a state fair hearing under the Code and the rules. The district court found Colwell was entitled to a state fair hearing under the Code and the rules.

---

for enrollees."). However, states may choose to allow providers a review process. *Id.* § 438.402(c)(1)(ii).

Colwell also sought a ruling that he could seek reimbursement from his indigent patients for claims not covered or reimbursed by Delta Dental. The district court found he could. Finally, the district court found DHS must pay for the dentist's attorney fees under Iowa Code section 625.29 because DHS's decision to deny a state fair hearing was "legally unsound, unreasonable and unsupported by substantial evidence." DHS appeals.

## II. Issues.

DHS raises four issues in this appeal. First, whether Iowa Code section 249A.4(11) requires DHS to provide state fair hearings for providers. Second, whether Colwell has a right to a state fair hearing individually and on behalf of his patients under the rules. Third, whether Colwell may bill patients for services not covered or reimbursed by Delta Dental. Fourth, whether Colwell is entitled to an award of attorney fees.

## III. Standard of Review.

Iowa Code section 17A.19 governs judicial review of agency action. Iowa Code § 17A.19. In a judicial review action on appeal, our job is to determine whether in applying the applicable standards of review under section 17A.19(10), we reach the same conclusions as the district court. *Banilla Games, Inc. v. Iowa Dep't of Inspections & Appeals*, 919 N.W.2d 6, 12 (Iowa 2018). The petitioner challenging agency action has the burden of demonstrating the prejudice and invalidity of the challenged agency action. Iowa Code § 17A.19(8)(*a*).

The applicable standard of review depends upon the error asserted by the petitioner. *Burton v. Hilltop Care Ctr.*, 813 N.W.2d 250, 256 (Iowa 2012). When the legislature has clearly vested interpretive authority with an agency, we defer to the agency's interpretation of the statutory language and reverse only when the agency's interpretation is "irrational, illogical, or wholly unjustifiable." *Gartner v. Iowa Dep't of Pub. Health*, 830 N.W.2d

335, 343 (Iowa 2013) (quoting *NextEra Energy Res. LLC v. Iowa Utils. Bd.*, 815 N.W.2d 30, 37 (Iowa 2012)). However, when the legislature has not clearly vested interpretive authority with an agency, our standard of review is for errors of law. *Id.* "To determine whether an agency has been given authority to interpret statutory language, 'we carefully consider "the specific language the agency has interpreted as well as the specific duties and authority given to the agency" ' " regarding the particular statutes. *Banilla Games*, 919 N.W.2d at 13 (quoting *Gartner*, 830 N.W.2d at 343).

We have held that section 249A.4 does not grant DHS authority to interpret its own rules and regulations.[5] *See Sunrise Ret. Cmty. v. Iowa Dep't of Human Servs.*, 833 N.W.2d 216, 219 (Iowa 2013); *Am. Eyecare v. Dep't of Human Servs.,* 770 N.W.2d 832, 836 (Iowa 2009). Thus, we will review DHS's interpretations of its rules for correction of errors of law. *See NextEra Energy Res., LLC*, 815 N.W.2d at 37. We also apply the standard of correction of errors of law to the award of attorney fees. *See Lee v. State*, 874 N.W.2d 631, 637 (Iowa 2016).

We need not decide whether we defer to DHS's interpretation of Iowa Code section 249A.4(11) because even under a de novo standard—which is applied in division IV of the opinion—we agree with DHS's interpretation of the statute.

**IV. Whether Iowa Code Section 249A.4(11) Requires DHS to Provide State Fair Hearings for Providers.**

DHS claims it correctly concluded section 249A.4(11) does not require the DHS director to provide administrative review to providers. Colwell disagrees. He argues the district court was correct in interpreting section 249A.4(11) as requiring the director to hold a hearing for providers.

---

[5]In addition, DHS, in its submission to the district court, admitted it does not have authority to interpret its own rules.

Before engaging in statutory interpretation, we must determine whether the statute is ambiguous. *State v. Spencer*, 737 N.W.2d 124, 129 (Iowa 2007). A statute is ambiguous if reasonable minds could disagree as to its meaning. *Id.* Ambiguity may arise from either the meaning of particular words or the general scope and meaning of a statute. *Id.*

Iowa Code section 249A.4(11) provides,

> [T]he director is hereby specifically empowered and directed to . . . provide an opportunity for a fair hearing before the department of inspections and appeals to an individual whose claim for medical assistance under this chapter is denied or is not acted upon with reasonable promptness. Upon completion of a hearing, the department of inspections and appeals shall issue a decision which is subject to review by the department of human services.

Iowa Code § 249A.4(11). The word in dispute is "individual."

The chapter does not define "individual." *See id.* § 249A.2. *Webster's* defines "individual" as "a single human being as contrasted with a social group or institution." *Individual, Webster's Third New International Dictionary* (unabr. ed. 2002). Under this first definition, it is likely the legislature was referring only to a particular person receiving Medicaid, not persons, groups of people, or institutions acting as providers. *See* Iowa Code § 249A.4(11). *Webster's* also defines "individual" as "a single or particular being or thing or group of beings or things." *Individual, Webster's Third New International Dictionary.* Under this second definition, an individual for purposes of the statute is a person or group of persons whose claim for medical assistance was denied. *See* Iowa Code § 249A.4(11). This second definition appears to give to any individual—a Medicaid recipient or provider—the right to a state fair hearing.

The statute is ambiguous because reasonable minds could disagree as to the meaning of "individual" as used in the statute. *See Spencer*, 737 N.W.2d at 129. We therefore apply the tools of statutory interpretation to construe the statute and determine the legislature's true intent by the words it chose to use. *See State v. Tarbox*, 739 N.W.2d 850, 853 (Iowa 2007).

We examine the entire statute and interpret the term "individual" in a manner consistent with the statute as an integrated whole. *See Tow v. Truck Country of Iowa, Inc.*, 695 N.W.2d 36, 39 (Iowa 2005). While the legislature did not define the term "individual," it did use the term elsewhere in chapter 249A. The legislature used "individual" in the definition of "discretionary medical assistance" three times, each time referring to persons receiving medical assistance:

> "*Discretionary medical assistance*" means mandatory medical assistance or optional medical assistance provided to medically needy *individuals* whose income and resources are in excess of eligibility limitations but are insufficient to meet all of the costs of necessary medical care and services, provided that if the assistance includes services in institutions for mental diseases or intermediate care facilities for persons with an intellectual disability, or both, for any group of such *individuals,* the assistance also includes for all covered groups of such *individuals* at least the care and services enumerated in Tit. XIX of the Federal Social Security Act . . . .

Iowa Code § 249A.2(3) (emphasis added). The legislature also used the term to define "provider" as "an individual, firm, corporation, association, or institution which is providing or has been approved to provide medical assistance to recipients under this chapter." *Id.* § 249A.2(12).

The district court concluded that because of the plain language in the definition of provider, individual in the context of section 249A.4(11) must include a provider. However, the legislature defined a provider as

"an individual, *firm, corporation, association, or institution*." *Id.* (emphasis added). Thus, under the district court's logic, DHS is required to provide a hearing for a provider who is an individual, but need not provide a hearing for a provider organized as a firm, corporation, association, or institution. This is illogical. If the legislature had intended for "individual" to mean a group of individuals, which would encompass the providers who are firms, corporations, associations, or institutions, it would not have listed all of these terms in the definition of provider. In interpreting a statute, we look for an interpretation that is reasonable and avoids absurd results. *Spencer*, 737 N.W.2d at 130.

Moreover, the legislature used "individual" throughout the chapter to describe persons eligible for Medicaid. *See* Iowa Code §§ 249A.3–.4, .12. However, nowhere does "individual" refer to a provider, except in the definitions section, where it defines provider as an individual *or* firm, corporation, association, or institution. *See generally* chapter 249A; *see also* Iowa Admin. Code r. 441—7.1 (Distinguishing individuals from providers: "Individuals and providers that are not listed in paragraphs '1' to '12' may meet the definition of an aggrieved person if the department has taken an adverse action against that individual or provider.").

In addition, section 249A.4(11), adopted in 1967, uses the same language found in the Federal Medicaid Act, adopted in 1965, which requires states to provide state fair hearings for Medicaid recipients, but does not obligate state fair hearings for providers. *See* Medicaid Act of 1965, Pub. L. No. 89–97, tit. I, § 121(a), 79 Stat. 343, 343 (codified as amended at 42 U.S.C. § 1396a(a)(3) (2012)); *see also* Medicaid Program; Managed Care Rule, 66 Fed. Reg. 6228, 6343 (Jan. 19, 2001) (to be codified at 42 C.F.R. pt. 438) ("[I]f the Congress had intended that providers have specific appeal rights under Federal law, these would have

been provided for . . . . [T]his is best left for providers and MCOs or PHPs to negotiate.").  While the Federal Medicaid Act does not obligate states to provide state fair hearings for providers, it leaves the option for states to choose to do so.  *See* Medicaid Program; Managed Care Rule, 66 Fed. Reg. at 6343.  We find the Iowa statute takes a similar approach and leaves DHS the flexibility to provide a review process, but does not mandate such for providers.

Therefore, we find the language used by the legislature did not intend to mandate DHS to provide a review process for providers but only for Medicaid recipients.  We reach this conclusion because of the legislature's use of the term "individual" throughout the Code to refer to Medicaid recipients, not providers, and the language used in our statute mirrors the federal language, which does not obligate a state fair hearing for providers.  Accordingly, we reverse the district court on this issue.

**V.    Whether Colwell Has a Right to a State Fair Hearing Individually and on Behalf of His Patients Under the Rules.**

While section 249A.4(11) does not obligate DHS to provide state fair hearings for providers, DHS is free to provide a review process through administrative rules.  *See* Iowa Code § 249A.4 (giving DHS director the authority to establish rules and procedures for the implementation of the chapter); *see also* Medicaid Program; Managed Care Rule, 66 Fed. Reg. at 6343 (providing that the federal regulation does not prohibit a state from granting providers the right to administratively challenge managed care organization decisions affecting them).

Colwell argues the administrative rules in effect at the time provide him a state fair hearing both independently and as a representative of a patient.  The administrative rules provide for a state fair hearing concerning decisions regarding services.  In relevant part they provide,

> Decisions and actions by the department regarding eligibility or services provided under this chapter may be appealed pursuant to 441—Chapter 7. A provider requesting a hearing on behalf of a member must have the prior express written consent of the member or the member's lawfully appointed guardian. Notwithstanding any contrary provision in 441—Chapter 7, no hearing will be granted unless the provider submits a document providing the member's consent to the request for a state fair hearing.

Iowa Admin. Code r. 441—74.10(1).

Administrative rule 441—7.1 defines an aggrieved provider in relevant part as,

> 7.     . . . [A] person or entity:
>
> ●      Whose claim for payment or request for prior authorization of payment has been denied in whole or in part and who states that the denial was not made according to department policy. Providers of Medicaid services must accept reimbursement based on the department's methodology.
>
> . . . .
>
> ●      Who has been notified that the managed care reconsideration process has been exhausted and who remains dissatisfied with the outcome.
>
> . . . .
>
> ●      Who, as a managed care organization (MCO) provider or Iowa plan contractor when acting on behalf of a member, has a dispute regarding payment of claims.

*Id.* r. 441—7.1. We will give words their ordinary and common meaning by considering, among other things, the context in which they are used. *Tarbox,* 739 N.W.2d at 853.

The administrative rules specifically state that an aggrieved provider has a right to appeal for the claims Colwell makes. *See* Iowa Admin. Code r. 441—7.1. Colwell claims he has complied with the rules for three reasons. First, Delta Dental denied his claims without following the

department policy, which the 2016 Office Manual sets forth. Second, he also claims he is entitled to a hearing because he has exhausted the reconsideration process and remains dissatisfied with the outcome. Finally, he claims a right to a hearing on behalf of his patients.

The record supports that these provisions give Colwell the right to a state fair hearing. Delta Dental acknowledged Colwell's right to appeal in the addendum to Delta Dental's final decisions sent to Colwell on November 10, 2016. As the addendum noted, the 2016 Office Manual describes the process for the state fair hearing. The Office Manual, which "includes an [a]ppeal and [c]omplaint [p]rocess and access to the Iowa Department of Human Service's state fair hearing system," allows "[p]articipating [d]entists acting on the behalf of a [c]overed [e]nrollee" to access the grievance system.

Thus, reading the plain language of the administrative rules and accompanying department policy—the contract between Colwell and Delta Dental—a provider wishing to access the state fair hearing process after the denial of claims by Delta Dental must first file an appeal to Delta Dental on behalf of his patients. If he is still dissatisfied with the outcome of the appeal, he can appeal for a state fair hearing on behalf of himself or his patients.

Another factor supporting our conclusion that a state fair hearing is available to Colwell is DHS's actions in amending the rules after Colwell filed his petition for judicial review. After Colwell filed his appeal, DHS amended its rules by creating a new category for state fair hearings from managed care decisions and eliminating the aggrieved person provider-specific definitions relied upon by Colwell. *See* 39 Iowa Admin. Bull. 2368, 2374–75 (June 7, 2017) (filing ARC 3093C which revised Iowa Administrative Code rules 441—7.2(5) and 7.2(6)). Our rules of statutory

construction hold that when the legislature amends a statute, a presumption exists that the legislature intended to change the law. *Star Equip., Ltd. v. State*, 843 N.W.2d 446, 455 (Iowa 2014). "The rules of statutory construction and interpretation also govern the construction and interpretation of administrative rules and regulations." *State v. Albrecht*, 657 N.W.2d 474, 479 (Iowa 2003). We see the change in the agency rule as a change in the law.

Therefore, Colwell is entitled to appeal for a state fair hearing on behalf of himself or his patients, where the parties can properly litigate which claims Delta Dental must reimburse Colwell for either in full or in part.

### VI. Whether Colwell May Bill Patients for Services Not Covered or Reimbursed by Delta Dental.

Colwell argues he may charge patients for services not covered by the Dental Wellness Program. DHS disagrees, saying providers must accept what Medicaid pays upon adjudication of providers' claims, even if the amount is zero.

First, it is necessary to define the dispute between the parties. Colwell makes it clear he is not claiming that he can bill his patients the difference between his usual and customary charges and what he receives from Medicaid or Delta Dental on a specific claim. He refers to that situation as "balance billing."

The administrative rules state,

> [T]he provider agrees . . . [t]hat the charges as determined in accordance with the department's policy shall be the full and complete charge for the services provided and no additional payment shall be claimed from the recipient or any other person for services provided under the program.

Iowa Admin. Code r. 441—79.6(2). Thus, this rule makes it clear that a provider cannot balance bill.

The real issue is whether a provider can bill for services not covered at all by the Dental Wellness Program. In this regard, the rules provide that before a provider performs a service, the provider must inform the recipient that the recipient will be responsible for the bill if the provider performs a noncovered service. *Id.* r. 441—79.9(4). Thus, the rules recognize that a provider may charge a patient for services not covered by the Dental Wellness Program, as long as the provider discloses that the patient may be responsible for noncovered services prior to performing the procedure. *See id.* The dispute between Colwell and DHS boils down to what is a "noncovered service."

Colwell relies on the definition of "covered services" from *Iowa Dental Ass'n v. Iowa Insurance Division,* 831 N.W.2d 138, 149 (Iowa 2013). The relevant Code section in that case defined "covered services" as "services reimbursed under the dental plan." *See* Iowa Code § 514C.3B(3)(*a*). There, we interpreted "covered services" as used in the context of Iowa Code section 514C.3B regarding insurance coverages. *See Iowa Dental,* 831 N.W.2d at 145. We defined covered services as services that are "actually reimbursed" under a plan, rather than services that are reimbursable or generally reimbursed under a plan. *Id.*

The flaw with relying on *Iowa Dental* in the present case is two-fold. First, *Iowa Dental* was interpreting a private insurance contract. *See id.* at 140. The provisions of section 514C.3B apply to private insurance dental plans. *See* Iowa Code § 514C.3B. The Code defines a dental plan to mean "any policy or contract of insurance which provides for coverage of dental services not in connection with a medical plan that provides for the coverage of medical services." *Id.* In contrast, the Dental Wellness

Program is part of Medicaid. As we explained in another context, Medicaid is not insurance. *Becker v. Cent. States Health & Life Co. of Omaha*, 431 N.W.2d 354, 358–59 (Iowa 1988), *overruled on other grounds by Johnston Equip. Corp. of Iowa v. Indus. Indem.*, 489 N.W.2d 13, 17 (Iowa 1992). "Medicaid provides government medical assistance to a limited category of persons who are unable to meet the full cost of their care. No contractual arrangement for a stipulated consideration is involved." *Id.* at 359. Thus, any argument under 514C.3B is inapplicable. Therefore, a noncovered service is not a service not actually reimbursed under a dental plan.

Second, the administrative rules state which dental procedures the Dental Wellness Program covers. Iowa Admin. Code r. 441—78.4. It makes no sense to define a noncovered service as a service that Delta Dental did not reimburse under the plan, when the rules define what *is* covered.

The purpose of Medicaid is to "provid[e] federal financial assistance to States that choose to reimburse certain costs of medical treatment for needy persons." *Clark by Clark v. Iowa Dep't of Human Servs.*, 513 N.W.2d 710, 710 (Iowa 1994) (alteration in original). If we were to hold a participating provider could charge Medicaid recipients for services that are normally covered by Medicaid, but that are not reimbursed for whatever reason, the purpose of Medicaid would be frustrated.

As in the case before us, Delta Dental may deny coverage based on alleged errors on the part of the provider. For instance, Delta Dental documented that it denied numerous claims submitted by Colwell for insufficient documentation of services provided and insufficient documentation of need before providing services. While DHS should hold a state fair hearing for Colwell and Delta Dental to dispute the validity of the denials, the outcome of whether an indigent person must pay for the

services that are usually covered should not be in dispute. If Delta Dental does not reimburse Colwell for services because of errors on Colwell's part, Colwell cannot charge the Medicaid recipient who received services that rule 441—78.4 routinely covers when documentation is correctly submitted.

Moreover, examining the federal statutory framework of Medicaid bolsters this conclusion. The Medicaid program is a cooperative state-federal program, and while participation is voluntary, "once a state chooses to participate, it must comply with the federal statutory requirements." *Anderson v. Iowa Dep't of Human Servs.*, 368 N.W.2d 104, 108 (Iowa 1985). Under the federal Medicaid regulations, providers must accept the amount Medicaid pays as payment in full. 42 C.F.R. § 438.106(b) (2016). Payments to providers may be less than providers would normally charge for a service rendered, and Medicaid enrollees are not responsible for unpaid services. *Id.* (b)–(c).

One federal circuit court has found the federal DHS's interpretation of covered services reasonable, when the term refers to *coverable* services under the federal Medicaid program. *See Banks v. Sec'y of Ind. Family & Soc. Servs. Admin.*, 997 F.2d 231, 243–44 (7th Cir. 1993) (finding federal Secretary of Health and Human Services' interpretation that federal law disallows providers to collect payment from Medicaid recipients for covered Medicaid services, even where the provider's claim for reimbursement was denied, was reasonable and "comports with the purposes of the Medicaid Act and Congress's intention to provide assistance to individuals who lack the wherewithal to meet the necessary costs of medical care").

In conclusion, we hold when providers render services that are not recoverable under the Dental Wellness Program, with the proper pretreatment disclosures required by rule 441—79.9(4), a provider may

recover from the client for these uncovered services. When, however, the Dental Wellness Program does not reimburse a provider for services routinely covered under rule 441—78.4, the patient cannot be responsible for the charge of services.

### VII. Whether Colwell Is Entitled to an Award of Attorney Fees.

In general, a court may not award attorney fees unless authorized by statute or contract. *NevadaCare, Inc. v. Dep't of Human Servs.*, 783 N.W.2d 459, 469 (Iowa 2010). Under the Iowa Code, a party that prevails in a judicial review matter brought against the state pursuant to chapter 17A may be entitled to attorney fees and expenses. Iowa Code § 625.29(2). The relevant Code provision provides,

> 1. Unless otherwise provided by law, . . . the court in . . . an action for judicial review brought against the state pursuant to chapter 17A other than for a rulemaking decision, shall award fees and other expenses to the prevailing party unless the prevailing party is the state. However, the court shall not make an award under this section if it finds one of the following:
>
> *a.* The position of the state was supported by substantial evidence.
>
> *b.* The state's role in the case was primarily adjudicative.
>
> *c.* Special circumstances exist which would make the award unjust.
>
> *d.* The action arose from a proceeding in which the role of the state was to determine the eligibility or entitlement of an individual to a monetary benefit or its equivalent or to adjudicate a dispute or issue between private parties or to establish or fix a rate.

Iowa Code § 625.29(1).

Colwell did prevail on his claim that he is entitled to a state fair hearing. However, DHS claims exceptions apply to this case precluding an award of fees. We agree.

The first applicable exception is "the state's role in the case was primarily adjudicative." *Id.* § 625.29(1)(*b*). "[I]f an agency's function principally or fundamentally concerns settling and deciding issues raised, its role is primarily adjudicative." *Remer v. Bd. of Med. Exam'rs*, 576 N.W.2d 598, 601 (Iowa 1998). Here, Colwell requested DHS to adjudicate a dispute between him and Delta Dental. Had DHS accepted the appeal, DHS would have decided the dispute. The only reason DHS did not adjudicate the dispute between Colwell and Delta Dental was that DHS determined it had no subject matter jurisdiction over the dispute.

It is a fundamental principle of our jurisprudence that a court has the inherent power to decide if it has subject matter jurisdiction over a matter. As we said over fifty years ago,

> Every court has inherent power to determine whether it has jurisdiction over the subject matter of the proceedings before it. It makes no difference how the question comes to its attention. Once raised, the question must be disposed of, no matter in what manner of form or stage presented. The court on its own motion will examine grounds of its jurisdiction before proceeding further.

*Carmichael v. Iowa State Highway Comm'n*, 156 N.W.2d 332, 340 (Iowa 1968).

Here, Colwell filed for a state fair hearing to determine if Delta Dental should pay his claims. In other words, DHS was deciding if Delta Dental followed the appropriate rules, laws, or guidelines when it denied Colwell's claims. However, before reaching the merits of the dispute, the agency determined it did not have subject matter jurisdiction to hear the case.

Had DHS heard the dispute and Colwell prevailed, he could not ask for fees against DHS as the adjudicator. Therefore, he should not be entitled to fees when DHS determined it had no jurisdiction to hear the appeal.

We also find a second exception applies. It provides,

> The action arose from a proceeding in which the role of the state was to determine the eligibility or entitlement of an individual to a monetary benefit or its equivalent or to adjudicate a dispute or issue between private parties or to establish or fix a rate.

Iowa Code § 625.29(1)(*d*). Here, Colwell asked DHS to determine the monetary benefit to which he was entitled under the Dental Wellness Program. This clearly fits under section 625.29(1)(*d*)'s exception.

Therefore, we find the State is not liable for any of Colwell's attorney fees under Iowa Code section 625.29(1).

**VIII. Disposition.**

We reverse the judgment of the district court finding Iowa Code section 249A.4(11) requires DHS to afford Colwell a state fair hearing. However, we affirm the judgment of the district court finding the administrative rules do require DHS to give Colwell a state fair hearing. We further affirm the judgment of the district court finding that Cowell may bill patients for services not covered or reimbursed by Delta Dental, but only to the extent as set forth in this opinion. Finally, we reverse the judgment of the district court awarding Colwell attorney fees under Iowa Code section 625.29(1).

Therefore, we remand the case back to the district court to enter a judgment consistent with this opinion. After doing so, the district court shall remand the case back to DHS to provide a state fair hearing appeal to Colwell. We assess the costs equally between the parties.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**