# IN THE COURT OF APPEALS OF IOWA

No. 23-0017
Filed January 24, 2024

**PENNYMAC LOAN SERVICES, LLC,**
    Plaintiff-Appellee,

**vs.**

**PHEASANT TRAIL SEVENTH OWNERS ASSOCIATION, INC.,**
    Defendant-Appellant.
_____

Appeal from the Iowa District Court for Linn County, Kevin McKeever, Judge.

Pheasant Trail Seventh Owners Association, Inc. appeals a ruling denying its motion for summary judgment and granting PennyMac Loan Services, LLC's motion for summary judgment. **AFFIRMED.**

Eric J. Langston of AEGIS Law, Frontenac, Missouri, for appellant.

Matthew E. Laughlin of Dentons Davis Brown, P.C., Des Moines, for appellee.

Considered by Bower, C.J., and Schumacher and Langholz, JJ.

**BOWER, Chief Judge.**

Pheasant Trail Seventh Owners Association, Inc. (the Association) appeals a ruling denying its motion for summary judgment and granting PennyMac Loan Services, LLC's (PennyMac) motion for summary judgment. The district court determined the Association had no authority to assess foreclosure fees or attorney fees pursuant to its governing documents. Finding no error in the district court's interpretation of the Association's governing documents, we affirm.

## I. *Background Facts and Proceedings*

At issue is one unit of the condominium complex formerly owned by Gregory Williams. The complex is administered by a board of the Association. These material facts are not in dispute.

On March 1, 2019, Williams executed and delivered a promissory note and purchase money mortgage for the unit, "together with an undivided percentage interest in and to the common areas and facilities appurtenant thereto," to a nominee of Veridian Credit Union, Mortgage Electronic Registration Systems, Inc. (MERS). On April 1, 2020, MERS assigned and delivered the note and mortgage to PennyMac.

On July 6, 2021, PennyMac elected, in accordance with the terms and conditions of the note and mortgage, to declare the whole of the note due and payable and to exercise its right to enforce payment and foreclose the mortgage by filing a petition of foreclosure. The Association was not a party to the foreclosure. On October 6, the district court entered judgment in favor of PennyMac and ordered the real estate be foreclosed with PennyMac as the valid owner and holding a paramount lien.

On February 13, 2022, the Association attempted to assess PennyMac a "foreclosure fee" of $3500 and demanded attorney fees in the amount of $3000.

On June 3, PennyMac became the titleholder of the real estate.

On June 23, PennyMac attempted to schedule arbitration regarding the "foreclosure fee" and attorney fees. The Association acknowledged receipt of the arbitration request but directed PennyMac to complete an "Arbitration Demand Form" per its governing documents.

On August 2, the Association advised PennyMac arbitration had been waived because PennyMac did not submit the form.

On September 6, PennyMac filed a petition seeking a declaratory judgment pursuant to Iowa Rule of Civil Procedure 1.1101 with respect to whether the Association's governing documents provide the authority to impose a "foreclosure fee" or collect attorney fees from PennyMac.

The parties filed cross-motions for summary judgment. The Association acknowledged "the Governing Documents admittedly do not make reference to 'admission or transfer fees.'" But it asserted its "powers include those articulated in the Governing Documents and, by the very terms of the Governing Documents, further include those articulated by statute."[1] The Association relied upon its

---

[1] The Association's Declaration provides in Article VIII, section 1:

> Each owner agrees that the Association has and shall exercise all powers, rights, and authority granted unto it by Chapters 504A and 499B of the Code of Iowa, and such as are more particularly set forth in the condominium documents, including the making of assessments chargeable to owners and a lien on a Unit for any common expenses, and the right to foreclose the lien on a Unit and acquire a Unit at foreclosure sale and to hold, lease, mortgage or convey the same, but such acquisition shall be on behalf

inherent corporate powers under Iowa Code chapter 504 and 499B to impose "admission and transfer fees upon its members" and asserted the "foreclosure fee" is allowable as an admission fee or transfer fee pursuant to Iowa Code section 504.302(14) (2021). *See* Iowa Code §§ 504.302(14) (granting the corporation the authority "to do all things necessary or convenient to carry out its affairs" including "[i]mpose dues, assessments, and admission and transfer fees upon its members"), .1701(1) ("A domestic corporation that is incorporated under chapter 504A . . . is subject to this chapter beginning on July 1, 2005.").

With respect to its demand for attorney fees, the Association insisted it has the authority to assess attorney fees as a special assessment against PennyMac for failing to timely pay the transfer fee. It relied on two provisions of the Declaration: the first, is Article VII, section 9, which states it may sue an owner and "[i]n the event of suit or foreclosure" it may "collect reasonable attorney fees from the owner." The second, is Article X, section 11, which states that the Association can recover attorney's fees

> [i]f the Association successfully brings an action to . . . *otherwise enforce the provisions* of this Declaration, the ByLaws or the rules and regulations of the Association, the cost of such action, including reasonable legal fees, shall become a binding, personal obligation of the violator and such costs shall also be a lien upon the Unit occupied by the violator.[2]

(Emphasis added.)

---

of all Unit owners, all of whom, however, shall be deemed to have waived all rights of partition with respect to the Unit.

[2] The provision also allows the Association to impose a penalty for violations of the governing documents. The Association conceded the transfer fee was not imposed for a violation but rather as "and admission or transfer fee."

PennyMac asserted the Association's Declaration Article VIII, section 6, provides any former owner's unpaid assessments are not collectible against a new owner in a foreclosure. It noted chapter 504A, though applicable in April 2005 when the Declaration was signed, was repealed effective July 2005.[3] It argued the Association could not rely on chapter 504A (or chapter 504) to infer authority into its governing documents.

PennyMac also noted Iowa Code section 499B.18 provides:

> Where the mortgagee of a first mortgage of record or other purchaser of an apartment obtains title to the apartment as a result of foreclosure of the first mortgage, such acquirer of title, the acquirer's successors and assigns, *shall not be liable for the share of the common expenses or assessments* by the council of coowners chargeable to such apartment which became due prior to the acquisition of title to such apartment by such acquirer. Such unpaid share of common expenses or assessments shall be deemed to be common expenses collectible from all of the apartment owners including such acquirer, the acquirer's successors and assigns.

The district court granted PennyMac's motion and denied the Association's, finding there was no language in the governing documents that allowed the Association to impose a "foreclosure fee," "transfer fee," or attorney fees incident to a third-party foreclosure. The Association appeals.

## II.    Standard of Review

Our review of a district court ruling on a motion for summary judgment, including any statutory interpretation issues, is for correction of errors at law. *Albaugh v. The Reserve*, 930 N.W.2d 676, 682 (Iowa 2019). "Summary judgment is proper when the moving party has shown 'there is no genuine issue as to any

---

[3] *See* 2004 Iowa Acts ch. 1049, § 190.

material fact and the moving party is entitled to judgment as a matter of law.'" *Id.* (citation omitted).

### III.    Analysis

The issues presented are matters of interpretation of the Association's governing documents. "The Association's governing documents are its declaration and bylaws, which are to be construed as a whole." *Oberbillig v. W. Grand Towers Condo. Ass'n*, 807 N.W.2d 143, 150 (Iowa 2011). "Interpretation involves ascertaining the meaning of contractual words; construction refers to deciding their legal effect. Interpretation is reviewed as a legal issue unless it depended at the trial level on extrinsic evidence. Construction is always reviewed as a law issue." *Fashion Fabrics of Iowa, Inc. v. Retail Invs. Corp.*, 266 N.W.2d 22, 25 (Iowa 1978); *accord Oberbillig*, 807 N.W.2d at 149.

*A.    Foreclosure Fee.* The Association concedes the governing documents have no express provision allowing the assessment of a foreclosure fee, but it contends that authority is provided under Iowa Code section 504.302(14). To the extent the district court concluded chapter 504 had no applicability, we disagree as "[a] domestic corporation that is incorporated under chapter 504A, Code 2005, is subject to this chapter beginning on July 1, 2005." Iowa Code § 504.1701(1). But we need not remand for further proceedings.

Iowa Code section 504.302(14) provides "every corporation" has the "powers . . . to do all things necessary or convenient to carry out its affairs, including "[i]mpose dues, assessments, and admission and transfer fees upon its

members."[4]  The Association's Bylaws Article VI, section 1 provides the authority to impose assessments for "common expenses."  So too, the Declaration Article VIII, section 3, explicitly provides the Board has the authority to make

> *assessments* chargeable to owners and a lien on a Unit for *any common expenses, and the right to foreclose the lien on a Unit* and acquire a Unit at foreclosure sale and to hold, lease, mortgage or convey the same, but such acquisition shall be on behalf of all Unit owners, all of whom, however, shall be deemed to have waived all rights of partition with respect to the Unit.

But nothing in the Association's Bylaws or Declaration imposes an admission or transfer fee.[5]

---

[4] Article VI of the Bylaws states:

> All of the powers and duties of the corporation (including those existing under the common law and statutes, the Articles of Incorporation, and the documents establishing the Condominium), shall be exercised by the board of directors.  Such powers and duties of the directors shall be exercised in accordance with the provisions of the Declaration of Condominium that governs the use of the land, and shall include in addition to those elsewhere provided for, but shall not be limited to, the following:
>
> 1. To make and collect assessments against members for all common expenses.
>
> 2. To use the proceeds of assessments in the exercise of its powers and duties.
>
> . . . .
>
> 6. To enforce by legal means the provisions of the condominium documents, the Articles of Incorporation, the Bylaws of the corporation and the regulations for the use of the property in the condominium.
>
> . . . .
>
> 11. To interpret and apply the provisions of the condominium documents in matters of dispute between owners or between owners and the Association, which determination shall be binding on the owners . . . .

[5] Because chapter 504 contains no definition of a transfer fee in its definitional section 504.141, we look to "the term's ordinary meaning."  *State v. Boone*, 989 N.W.2d 645, 650 (Iowa 2023).  "Transfer" is defined as "[a] conveyance of property or title from one person to another."  *Transfer*, Black's Law Dictionary (11th ed. 2019).  "The term embraces every method . . . of disposing of or parting with property or an interest in property, including retention of title as a security interest

PennyMac foreclosed its mortgage obtaining a lien upon the unit, which was reduced to judgment. It obtained title to the unit on June 3,[6] and thus was "subject to assessment liens that shall have come due subsequent to . . . the decree of foreclosure." The only asserted assessment is one for the "foreclosure fee" as a transfer fee for which we have found no authority.[7]

*B.     Attorney Fees.* "In general, a court may not award attorney fees unless authorized by statute or contract." *Colwell v. Iowa Dep't of Hum. Servs.*, 923 N.W.2d 225, 237 (Iowa 2019). "A written contract must contain an express provision regarding attorney fees and litigation expenses in order for a court to include attorney fees and litigation expenses in a favorable judgment."

---

and foreclosure of the debtor's equity right of redemption." *Id.* Thus, a transfer fee is the fee to convey title to property from one to another. That definition finds support in another provision of the code.

Iowa Code section 554.48, which governs conveyances of real property defines a "transfer fee":

> (1) For purposes of this section, unless the context otherwise requires:
>
> (a) "Transfer" means the sale, gift, conveyance, assignment, inheritance, or other transfer of ownership interest in real property located in this state.
>
> (b) (1) "Transfer fee" means a fee or charge payable upon the transfer of an interest in real property, or payable for the right to make or accept a transfer of an interest in real property, regardless of whether the fee or charge is a fixed amount or is determined as a percentage of the value of the property, the purchase price, or other consideration given for the transfer.

The $3500 "foreclosure fee" does not appear to have any direct connection to the transfer of title to the unit.

[6] As the owner of the unit PennyMac became a "member" of the Association whose "rights and obligations thereof shall be governed by the provisions of the Bylaws to be adopted as provided in Article VI."

[7] Under Declaration, Article VIII, ¶ 6(ii), the resulting assessment lien "shall be deemed to be an expense of the Association, but this shall not prevent the Association's right to collect the sums from the defaulting owner personally."

*NevadaCare, Inc. v. Dep't of Hum. Servs.*, 783 N.W.2d 459, 470 (Iowa 2010) (emphasis added).

On appeal, the Association's arguments to collect attorney fees here are unavailing. There are two instances in the governing documents where attorney fees can be assessed. First, Article VII, section 9 of the Bylaws, provides, "The Association may sue for money judgment for unpaid assessments or sums due without foreclosing or waiving any lien which it holds. In event of suit or foreclosure, the Association shall be entitled to collect reasonable attorney fees from owner." The Association has not sued for money judgment nor foreclosed on a lien; as the district court pointed out, the Association was not a party to the foreclosure action.

Second, Article X, section 11 of the Declaration states:

If the Association successfully brings an action to extinguish a violation or otherwise enforce the provisions of this Declaration, the Bylaws or the rules and regulations of the Association, the cost of such action, including reasonable legal fees, shall become a binding, personal obligation of the violator and such costs shall also be a lien upon the Unit occupied by the violator.

Again, the Association did not bring an action—successful or otherwise. We will not read additional language into the governing documents as the Association requests.

Ruling on the applicability of Article X, section 11, the district court stated:

On the attorney fee issue, the instances within the governing documents that allow for assessment of attorney fees . . . do not apply here. There is no disputed material fact on this issue. [The Association] was not a party to [the foreclosure action]. [The Association] has not brought an action to enforce the governing documents. Finally, as [PennyMac] points out, [the Association] has not provided a sufficient explanation of the computation of its fees. *See* Iowa Code § 625.25 (2021).

Finding no error, we affirm.

**AFFIRMED.**