# IN THE COURT OF APPEALS OF IOWA

———————————

No. 25-0458
Filed January 7, 2026

———————————

**Brian Dale Klein,**
Petitioner–Appellant,

v.

**Whirlpool Corporation,**
Respondent–Appellee.

———————————

Appeal from the Iowa District Court for Iowa County,
The Honorable Lars G. Anderson, Judge.

———————————

**AFFIRMED**

———————————

Thomas M. Wertz (argued), and Mindi M. Vervaecke of Wertz Law Firm,
Cedar Rapids, attorneys for appellant.

Kent M. Smith (argued) of Smith Mills Law P.C., West Des Moines,
attorney for appellee.

———————————

Heard at oral argument
by Greer, P.J., and Schumacher and Ahlers, JJ.
Opinion by Schumacher, J.

**SCHUMACHER, Judge.**

An injured claimant, Brian Klein, appeals, asserting the Iowa Workers' Compensation Commissioner improperly used agency discretion and judicial notice in determining the impairment rating for his shoulder to be nine percent, as opposed to fifteen percent as advocated by a medical expert. Upon our review, we affirm.

## I.     Background Facts & Proceedings

While working at Whirlpool Corporation (Whirlpool), Klein was feeding tubing through a machine and injured his right shoulder when attempting to pry the tubing. Klein had been working at Whirlpool for thirty-five years. He went to the University of Iowa Hospitals & Clinics for an evaluation on his shoulder, which was conducted by Dr. Matthew Bollier.

Dr. Bollier determined that the incident at Whirlpool was a significant factor which aggravated or worsened Klein's previous shoulder condition and recommended surgery. Dr. Bollier performed the surgery which included arthroscopy, SLAP repair, extensive debridement, distal clavicle excision, subpectoral biceps tenodesis, and decompression. Several months later, Klein received a corticosteroid injection. At a follow-up appointment, Klein reported to Dr. Bollier that the injection reduced his everyday pain but he continued to experience tenderness and anterior pain. Klein also reported that his shoulder felt weak and he could not lift two and one-half pound boxes above his shoulders in physical therapy.

Dr. Bollier informed Klein that he could use his shoulder freely as he was not causing any new damage to it and that Klein had achieved maximum improvement. Dr. Bollier stated that Klein had sustained a four percent upper extremity impairment.

Klein then underwent a functional capacity evaluation with Greg Munson, PT, who determined Klein could do medium duty work below shoulder level and light duty work above shoulder level. Dr. Bollier reviewed the evaluation report and recommended permanent work restrictions.

In preparation for his workers' compensation claim, Klein underwent an independent medical evaluation with Dr. Mark Taylor who found that Klein had an upper extremity impairment of fifteen percent due to his right shoulder. The fifteen percent was attributed to six percent impairment to range of motion and ten percent because of distal clavicle excision. In performing this evaluation, Dr. Taylor used Table 16-27 of the American Medical Association (AMA) Guides (*Guides*) for the distal clavicle excision.

Klein underwent another independent medical evaluation with Dr. Robert Broghammer, who determined Klein had sustained only a two-percent upper extremity impairment due to range of motion. Likewise, Dr. Broghammer used the *Guides* for the finding, with this impairment rating solely based on range of motion loss.

Following an arbitration hearing, the deputy commissioner issued a decision which weighed the testimony of medical experts, including Dr. Taylor, and considered the parties' legal arguments:

> Dr. Taylor assigned a 6 percent impairment to the right upper extremity based on the loss of range of motion and an additional 10 percent for the distal clavicle excision. Combined, the two impairments result in a 15 percent impairment.

> [Whirlpool] argues the issue regarding the impairment value of the distal clavicle excision should be governed by the [agency] case of *Jay v. Archer Skid Loader Service*, [Iowa Workers' Comp. Comm'n] No. 19003586.01, [2022 WL 17078713 (Aug. 23, 2022) (affirmed by *Jay v. Archer Skid Loader Serv., LLC*, Case No. CVCV064318 (Iowa Polk Cnty. Dist. Ct. May 22, 2023))].

In *Jay*, the appropriate rating for a distal clavicle excision applies a 25 per[cent] modifier. [Klein] argues that *Jay* is not controlling because the use of the modifier was based on the opinion of Dr. Kuhnlein in another agency decision and that if there is a disagreement in medical determination pursuant to the *Guides*, the opinion of one side of the dispute cannot become agency precedent. Applying the modifier, argues [Klein], is tantamount to using agency expertise which is prohibited according to Iowa Code § 85.34(2)(x) [(2023)].

In reviewing the *Jay* decision, the District Court addressed this argument. The injured worker in *Jay* argued that the Commissioner acted outside the scope of his authority by issuing his own impairment rating applying the modifier instead of adopting one offered by an expert. [Klein] submits that Dr. Taylor's uncontroverted opinion cannot be superseded or substituted by the agency's "judgment." However, the District Court in *Jay* directs the agency to do exactly that. If an expert opinion is flawed, it is the agency's duty to calculate the ratings in conformance with the AMA guidelines and to do otherwise would controvert the plain meaning of Iowa Code § 85.34(2)(x).

While Dr. Taylor's opinion is given more weight in this case, the appropriate impairment rating must include a 25 percent modifier. Thus, the impairment is 2.5 plus 6 percent. In the combined chart, this is 9 percent as a rating must be a whole number per the *Guides*.

(Citations to the record omitted.)

Following the deputy commissioner's ruling, Klein filed a motion for rehearing while each party appealed the arbitration decision. The commissioner then entered an appeal decision that affirmed the deputy's arbitration findings. Included within the appeal decision was an analysis of Klein's assertion that "utilization of the modifier specified by the AMA *Guides to the Evaluation of Permanent Impairment*, Fifth Edition, is use of agency expertise":

Pursuant to statute and administrative rule, this agency is required to utilize the AMA *Guides*, Fifth Edition, to determine functional disability of an injured worker in a scheduled member injury case such as this.

4

Reading the provisions of the AMA *Guides* and applying those provisions is not utilization of agency expertise. It is akin to an application of the law to the facts of the case.

[Klein] asserts that this agency must accept either the impairment rating offered by his evaluator, or the impairment rating urged by [Whirlpool], essentially without reference to the AMA *Guides*, Fifth Edition. [Klein]'s argument or urged approach requires this agency to read the competing impairment ratings offered without context and without determining their compliance with the AMA *Guides*, which were specifically incorporated by statute and administrative rule.

The commissioner also analyzed Klein's argument that the deputy improperly utilized judicial notice of the *Guides* in the arbitration decision without providing the required notice to the parties:

[T]he Iowa legislature specifically adopted the AMA *Guides* as a legal basis for award of permanent functional impairment. This agency enacted an administrative rule adopting the AMA *Guides*, Fifth Edition, as the binding standard for determining the extent of permanent functional impairment in scheduled member cases such as this case.

Courts and administrative agencies are not required to give notice of an intention to follow prior precedent . . . [or] statutory provisions or properly enacted administrative rules. By their very nature, statutes and administrative rules are duly enacted and parties should be aware that this agency would be following such enacted laws and rules.

. . . . [O]fficial notice is required if factual findings are to be made based on something outside of the evidentiary record. Official notice is not required under Iowa Code section 17A.14(4) to utilize and apply binding legal standards to the facts of this case.

. . . .

[Klein]'s argument essentially flips the statutory provision of Iowa Code section 85.34(2)(x) on its head and seeks to preclude this agency from actually reading and applying the governing standards outlined in the AMA *Guides*, Fifth Edition, as adopted by Iowa Code section 85.34(2)(x) and [Iowa Administrative Code rule 876–2.4]. Therefore, I reject claimant's legal challenge. . . .

5

After this appeal decision by the commissioner, Klein filed a motion for rehearing, asserting the agency went further than the standards of the *Guides* and used agency expertise to interpret those standards, in violation of Iowa Code section 85.34(2)(x). The commissioner concluded that if the agency was prohibited from reviewing and interpreting the *Guides*, there would be no objective standard with which a decision could be made and would require the decision to be based on a selected medical opinion, absent a procedure to determine accuracy. The commissioner accordingly affirmed the appeal decision. Klein then petitioned for judicial review in district court.

The district court found that section 85.34(2)(x) is ambiguous, as it requires the use of the *Guides* but does not explicitly state who is to interpret the *Guides*. In promoting the objectives of the statute, the court concluded "[t]he statute clearly requires that the AMA *Guides* be the polestar of the decision, and it is in the best interest of workers to have predictable, consistent results for comparable injuries." The court also found that it was not the legislature's intention to preclude the commission from "inspecting modifiers and correcting them if necessary," and this practice does not qualify as prohibited usage of agency expertise.

As to the issue of judicial notice of the *Guides*, the district court determined the deputy commissioner did not utilize official notice of the medical findings in the *Jay* decision. Instead, the deputy relied on the AMA *Guides* and not the medical findings in the *Jay* case. The court found that the reference to *Jay* was to show it was acceptable to use the twenty-five percent modifier and that it is appropriate to utilize the *Guides* "if a physician fails to apply the standard modifier for a distal clavicle excision."

Lastly, the court found that statutory rules regarding judicial notice "are only applicable to adjudicative facts, not legislative or otherwise non-

6

adjudicative facts," citing *Rhoades v. State*, 848 N.W.2d 22, 31 (Iowa 2014). The district court clarified that "[t]he AMA *Guides* are non-adjudicative in nature and are not susceptible to these rules" and found the deputy commissioner's utilization of the *Guides* was not improper.

## II.    Discussion

We review decisions by the Iowa Workers' Compensation Commission according to Iowa Code section 17A.19. Section 17A.19(10) permits relief from agency decisions which are unreasonable, arbitrary, capricious, or otherwise an abuse of discretion. *Arbor Ct. Healthcare, LLC v. Iowa Dep't of Health & Hum. Servs.*, No. 24-0697, 2025 WL 403639, at *3 (Iowa Ct. App. Feb. 5, 2025). "The petitioner challenging agency action has the burden of proving the invalidity [of the action] or prejudice asserted." *Banilla Games, Inc. v. Iowa Dep't of Inspections and Appeals*, 919 N.W.2d 6, 11 (Iowa 2018) (citing Iowa Code § 17A.19(8)(a)).

When we review an agency's interpretation of a statute, we first determine whether the agency has been vested with interpretive authority. *See P.M. Lattner Mfg. Co. v. Rife*, 2 N.W.3d 859, 865 (Iowa 2024). "If the legislature has clearly vested an agency with interpretive authority over a provision of law, we defer to the agency's interpretation." *Bridgestone Americas, Inc. v. Anderson*, 4 N.W.3d 676, 681–82 (Iowa 2024). Otherwise, if the legislature didn't clearly vest the agency with interpretive authority over the statute at issue, we review the agency's decision for the correction of errors at law. *Id.* at 682.

### (a) Whether the Commissioner's Decision is an Error at Law Due to Reliance on the AMA *Guides*

Our analysis begins with Iowa Code section 85.34. The relevant portion states, "the extent of loss or percentage of permanent impairment can be determined by use of the guides to the evaluation of permanent impairment, published by the American medical association, as adopted by the workers' compensation commissioner by rule pursuant to chapter 17A." Iowa Code § 85.34(2). Section 85.34(2)(x) goes on to state:

> [W]hen determining functional disability . . . , the extent of loss or percentage of permanent impairment shall be determined *solely* by utilizing the guides . . . published by the American medical association . . . . *Lay testimony or agency expertise shall not be utilized* in determining loss or percentage of permanent impairment pursuant to paragraphs "a" through "u", or paragraph "v" when determining functional disability and not loss of earning capacity.

(Emphasis added.)

Klein argues that the agency's reliance on the *Guides* is an impermissible interpretation based upon agency expertise, as prohibited by section 85.34(2)(x), and rather the agency is bound by the expert physician opinion. Whirlpool asserts that because the *Guides* are incorporated by administrative rule and statute, their employment by the agency is not prohibited.

As to the Iowa Workers' Compensation Commission, our courts have determined its commissioners do not possess interpretive authority over chapter 85. *Bridgestone Americas, Inc.*, 4 N.W.3d at 682. So we must then interpret section 85.34(2)(x) to determine the legislative intent behind the language "shall be determined solely by utilizing the guides." *See Bryant v.*

*State*, No. 18-1270, 2019 WL 1953518, at *1 (Iowa Ct. App. May 1, 2019). We adhere to the following principles of statutory interpretation:

> The purpose of statutory interpretation is to determine the legislature's intent. We give words their ordinary and common meaning by considering the context within which they are used, absent a statutory definition or an established meaning in the law. We also consider the legislative history of a statute, including prior enactments, when ascertaining legislative intent. When we interpret a statute, we assess the statute in its entirety, not just isolated words or phrases. We may not extend, enlarge, or otherwise change the meaning of a statute under the guise of construction.

*Id.* (quoting *Willard v. State*, 983 N.W.2d 52, 60–61 (Iowa 2017)). Also, when interpreting a statute to find legislative intent, we must first decide whether the statute is ambiguous. *Colwell v. Iowa Dep't of Human Servs.*, 923 N.W.2d 225, 232 (Iowa 2019). "A statute is ambiguous if reasonable minds could disagree as to its meaning. Ambiguity may arise from either the meaning of particular words or the general scope and meaning of a statute." *Id.* (citations omitted).

The language of section 85.34(2)(x) does not specifically address who must interpret the *Guides*. As we are not at liberty to supplement additional statutory requirements by deviating from the statute's plain language, we agree with the district court that section 85.34(2)(x) is ambiguous. *See Robinson v. Cent. Power Coop.*, 21 N.W.3d 842, 851 (Iowa 2025). So, "[w]e construe [the] statute 'liberally with a view to promoting its objects and assisting the parties in obtaining justice.'" *State v. Haglin*, No. 17-0447, 2018 WL 2084840, at *2 (Iowa Ct. App. May 2, 2018) (citation omitted). Our courts have found that "[t]he primary purpose of the workers' compensation statute is to benefit the worker and [their] dependents, insofar as statutory requirements permit." *Mid Am. Constr. LLC v. Sandlin*, 2 N.W.3d 838, 850 (Iowa 2024) (citation omitted).

9

The plain language of section 85.34(2)(x) indicates that use of the AMA *Guides* is meant to be the basis of qualifying the severity of impairments, providing uniform results for similar injuries. As section 85.34(2)(x) reads, we agree with the district court that "there is no distinction between commissioners and physicians interpreting the AMA *Guides*." Also, nothing in the plain language of the statute precludes the commissioner from reviewing an expert's choice of *Guides* modifiers and verifying them. To hold otherwise would allow experts to vary in their application of modifiers, leading to inconsistent or absurd results, which we strive to avoid. *See Borst Bros. Constr., Inc. v. Fin. of Am. Com., LLC*, 975 N.W.2d 690, 700 (Iowa 2022).

This is not to say that a commissioner may completely substitute an expert's medical opinion with their own prohibited expertise. *See Severin v. Second Inj. Fund*, File No. 1521101.01, 2021 WL 4709717, at *5–6 (Iowa Workers' Comp. Comm'n Oct. 4, 2021) (rejecting application of Table 17-31 of the *Guides*, holding it did not apply to claimant's injury when there was "no other expert has opined" to that effect and decision was not based on evaluation of a factual or credibility finding). Although a "commissioner may accept or reject [an] expert opinion in whole or in part," it cannot do so by relying on the agency's own expertise and instead must weigh the expert's credibility and factual determinations. *See Schutjer v. Algona Manor Care Ctr.*, 780 N.W.2d 549, 560 (Iowa 2010) (citation omitted). Here, the Commissioner simply corrected Dr. Taylor's expert opinion to conform with the *Guides* and did not substitute the opinion with agency expertise.

Klein argues that the commission and the district court improperly relied upon *Jay* as agency precedent in applying the twenty-five percent modifier to the distal clavicle excision impairment rating provided by

Dr. Taylor. Klein asserts that the Commission's reliance on the *Jay* decision as precedent is prohibited usage of agency expertise.

We agree with the district court that the deputy commissioner's reliance on *Jay* "was to illustrate the regular use of the 25 percent modifier, [and] that she is enabled to read the AMA *Guides* if a physician fails to apply the standard modifier for a distal clavicle excision."[1] As stated above, the commissioner has discretion to reject or accept an expert's opinion "in whole or in part," and section 85.34(2)(x) requires the utilization of the *Guides* to ensure consistent results for claimants. *See Schutjer*, 780 N.W.2d at 560. We find no error in the deputy commissioner's rejection of Dr. Taylor's impairment rating and application of the *Guides* as required by statute. *See Barry v. John Deere Dubuque Works of Deere & Co.*, No. 22-1000, 2023 WL 3612394, at *3 (Iowa Ct. App. May 24, 2023) (holding the commissioner, facing two competing expert opinions, one which correctly applied the *Guides*, did not abuse discretion by relying on the *Guides* "when weighing witness credibility").

**(b) Whether the Commissioner Improperly Utilized Judicial Notice in Applying the AMA *Guides'* Multiplier**

Klein asserts that the deputy commissioner's reliance on the *Guides* and *Jay* in applying a twenty-five percent multiplier to Dr. Taylor's impairment rating was improper use of judicial notice. Klein argues it was application of a fact not generally known and not capable of verification. Concerning judicial notice, the relevant statute states:

---

[1] In *Jay*, the claimant's physicians had differing opinions on whether distal clavicle excisions should be included within the *Guides*, and the Commission responded by applying instructions within the *Guides*.

> Official notice may be taken of all facts of which judicial notice may be taken and of other facts within the specialized knowledge of the agency. Parties shall be notified at the earliest practicable time, either before or during the hearing, or by reference in preliminary reports, preliminary decisions or otherwise, of the facts proposed to be noticed and their source, including any staff memoranda or data, and the parties shall be afforded an opportunity to contest such facts before the decision is announced unless the agency determines as part of the record or decision that fairness to the parties does not require an opportunity to contest such facts.

Iowa Code § 17A.14(4). The facts which may be judicially noticed are as follows:

> a. *Scope.* This rule governs judicial notice of an adjudicative fact only, not a legislative fact.
>
> b. *Kinds of facts that may be judicially noticed.* The court may judicially notice a fact that is not subject to reasonable dispute because it:
>
>> (1) Is generally known within the trial court's territorial jurisdiction; or
>>
>> (2) Can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.

Iowa R. Civ. P. 5.201. Adjudicative facts are "controlling or operative fact[s], rather than a background fact; a fact that concerns the parties to a judicial or administrative proceeding and that helps the court or agency determine how the law applies to those parties." *Rhoades*, 848 N.W.2d at 31 (citation omitted).

We agree with the district court that the above rules regarding judicial notice apply only to adjudicative facts, of which the *Guides* and the *Jay* decision do not qualify. The Iowa legislature adopted section 85.34(2)(x) and

Iowa Administrative Code rule 876-2.4[2] as the legal basis for determinations concerning permanent functional impairment. The utilization of the *Guides* and reference to previous agency decisions are not factual issues to which section 17A.14(4) applies. *See Brummer v. Iowa Dep't of Corr.*, 661 N.W.2d 167, 172 (Iowa 2003) (describing adjudicative facts as "individualized facts peculiar to the parties, which ordinarily answer the questions of who did what, where, when, how, why, with what motive or intent" (cleaned up)). Instead, it should be expected that the Commission would adhere to statutory requirements and guidance from previous decisions to weigh the evidence, comparable to our courts and other administrative agencies. *See Stone Container Corp. v. Castle*, 657 N.W.2d 485, 490 (Iowa 2003) ("The common meaning of statutory terms is not a matter upon which a party would offer formal proof and, consequently, is not a fact of which an agency must take official notice within the contemplation of section 17A.14(4)."); Iowa Code § 17A.19(10)(h) (noting the court can reverse an agency decision if it finds the "substantial rights of the person seeking judicial relief have been prejudiced" because of "[a]ction other than a rule that is inconsistent with the agency's prior practice or precedents").

---

[2] Iowa Administrative Code rule 876-2.4 provides in part:

> The Guides to the Evaluation of Permanent Impairment, Fifth Edition, published by the [AMA] are adopted for determining the extent of loss or percentage of impairment for permanent partial disabilities and payment of weekly compensation for permanent partial scheduled injuries under Iowa Code section 85.34(2) not involving a determination of reduction in an employee's earning capacity.

Accordingly, we affirm for the reasons stated above.

**AFFIRMED.**